[Civ. No. 17407. First Dist., Div. One. Oct. 20, 1958.]

ALBERT SHELL et al., Respondents, v. MAX SCHMIDT, Appellant.

James W. Harvey, Dorothy E. Handy, Walter K. Olds, Edward J. Boessenecker and George Olshausen for Appellant.

Ropers & Majeski for Respondents.

ST. CLAIR, J. pro tem.*—Defendant appeals from a judgment against him in the amount of $47,400 in favor of the 24 plaintiffs.

The defendant is a builder-contractor. Plaintiffs are third party beneficiaries of a contract between the defendant and the United States Government and sue for a breach thereof.

Plaintiffs, 12 couples, bought similar houses in a tract built by defendant. The complaint originally alleged causes of action for fraudulent misrepresentation and breach of contract. On a prior appeal, the court held that the causes of action for fraudulent misrepresentation were not proved as to nine couples, but that causes for breach of contract were established for all. The judgments were "reversed with instructions to the trial court to retry the issue of damages only, and when such damages have been ascertained, to enter judgments in favor of respondents in the amounts so fixed." (*Shell v. Schmidt*, 126 Cal.App.2d 279, 294 [272 P.2d 82].)

At the second trial plaintiffs waived their separate and individual causes of action for fraud and went to trial on a single cause of action by all plaintiffs, as third party beneficiaries, for breach of contract.

There was and is some difference of opinion as to what the law of the case is, as decided by the first opinion. All parties agreed, however, that it is the law of the case that defendant breached the contract. The principal problem was the choice of the applicable measure of damages.

The first opinion established the measure of damages, in the general words of Civil Code, section 3300, and the trial court here quite properly instructed in those words. However, that did not answer the refinement thereof raised by the defendant.

At this trial it was the theory of the plaintiffs that the proper measure of damages was what will hereafter be re-

*Assigned by Chairman of Judicial Council.

ferred to as the cost theory, i.e., the cost of making the work conform to the contract. The defendant vigorously advanced what will hereafter be referred to as the value theory, i.e., the measure of damages is the difference between the value of the structure as planned and its value as built.

Before examining the contentions of the parties, a review of the record at the second trial is necessary; first, to look at certain offers of proof made by the defendant and, secondly, to determine if the defendant was in fact precluded from proving parts of his offer and the resultant effect, on defendant's position, of the proof he made.

The principal items of deviation from the specifications that constituted the admitted breach of the contract were: (1) the exterior walls had no wood sheathing and consisted of construction paper covered with chicken wire and thereon an application of stucco; (2) the installation of one floor furnace of 35,000 B.T.U. capacity instead of two furnaces of 30,000 B.T.U. capacity each; and (3) the use of sheet rock with taped joints for the interior walls instead of gypsum lath and plaster.

In the first opinion the court said: ''All testified that their homes were not only underheated, but that, because of the inadequate exterior walls, they became damp and cold, and that mold and mildew grew on the back room walls. The evidence is ample and substantial to the effect that largely because of the inadequate exterior walls, and partly because of the inadequate heating equipment, the plaintiffs were made quite uncomfortable, and did not receive a house of the quality and type called for by the plans and specifications.'' (126 Cal.App.2d *supra*, 279, at 284.)

Plaintiffs advance this as the law of the case. Defendant disagrees.

Plaintiffs, without objection, at the second trial testified at length to the same facts. Some testified to the inferences referred to by the court. Certainly the defendant had in mind such inferences as he put in evidence to rebut them.

In addition to the above, plaintiffs put in experts who testified as to the cost of correcting the major breaches of the contract.

At the end of the plaintiffs' case the defendant made several offers of proof. The offers were formalized twice, in chambers, and there was a great deal of discussion concerning them. The following would appear to be a fair statement of what the defendant offered to prove.

## As to the Three Breaches

1. *Exterior wood sheathing.* Defendant made every effort to obtain sheathing but was unable to do so. None was available. Experts would testify that the type of construction used (somewhat exotically known as bellyband type of construction) and the manner in which it was done was equally as good as wood sheathing, in fact, it was better because, at the time only green lumber was available and its shrinking would crack the stucco. Experts would say that the dampness was not a result of using bellyband construction instead of wood sheathing; it is a matter of atmosphere, a condition caused by the manner in which the houses were vented; it is a humidity problem that arises from many factors.

2. *Interior walls.* Defendant made every effort to obtain plastering labor and materials essential to plastering the walls but was unable to obtain the same. The wall board that was substituted for the plaster is equally as good and can be used under the applicable F.H.A. regulations.

3. *The furnace.* Defendant provided what he had been advised was a better heating system than the one called for in the contract. One floor type of 50,000 B.T.U. capacity is preferable for heating a house to two 30,000 B.T.U. capacity wall type furnaces. Defendant was able to put in the floor type furnace because he had put in the much better conventional type of foundation rather than the slab type called for in the specifications.

## As to the Measure of Damages

*Willfullness.*

1. There was no willfullness or intentional action on defendant's part in making the first two omissions in question. He was compelled to complete the houses the way he did because of the shortages of labor and material. Defendant orally reported his inability to get materials to F.H.A. and was orally authorized to go ahead with what he could get. (Exhibit A attached to plaintiffs' complaint, a copy of application by defendant to F.H.A. for increase in selling price; this application showed some of the changes.)

2. *Substantial performance.* The houses, as built, are superior to the houses called for in the specifications, are of better construction and built on a better foundation.

3. *Value.* The houses as built were more valuable than the houses called for in the specifications. Certain of the plaintiffs

sold their houses at a higher price than was paid the defendant for them.

### Defendant's Evidence at the Second Trial

The exterior wooden sheathing's function would have been "backing" for the plaster; it had no insulating function or value at all. The boards are not put on close together. The sheet rock used in the interior is composed of the same material as plaster but is preformed in a factory instead of put on wet on the wall. It is taped together.

Dampness and mildew is a matter of ventilation. When by some circumstances of the location of windows and doors a dead air space prevails in a room, that creates dampness.

As to the exterior, it was not necessary to remove the stucco; plywood could be placed over the stucco, wire netting over the plywood and then stucco over that.

On the interior, one could leave the plasterboard up, put wire netting over it and then plaster.

The cost of the last two operations would be $1,391 plus 11 per cent profit, or a total of $1,544.

After the above two procedures, the houses would be superior to the original proposed house.

There is nothing in the original specifications that says anything about how the exterior sheathing and interior plastering are to be applied.

If the houses had the exterior sheathing they would not (1) save any loss of heat through the walls, (2) act as a vapor barrier, or (3) be any warmer. Construction methods of walls have no effect on moisture and mildew in a house. It is a condition that comes from heating the house. As the temperature inside is raised, humidity is raised and a dew point is reached; condensation occurs, strikes a cold wall and causes mold.

Nowadays wooden sheathing is not often used on account of the cracking that comes from the wood.

The jury quite evidently did not believe much of the testimony.

All during the trial and up to the time of oral argument, the defendant took the position that he had substantially performed the contract, and from that fact certain hereinafter referred to matters flowed. During the offer of proof, counsel for defendant said: "Now, it seems to me that we should be entitled to elicit evidence to show that what was done is equally as good as what was called for and that, from

that standpoint, we have substantially complied with our contract.''

There are many statements of the rule of substantial performance. *Thomas Haverty Co.* v. *Jones,* 185 Cal. 285 [197 P. 105], is a leading case in California and was cited by both parties to the trial court. The rule as laid down there reads: ''It has now been greatly relaxed and it is settled, especially in the case of building contracts where the owner has taken possession of the building and is enjoying the fruits of the contractor's work in the performance of the contract, that if there has been a substantial performance thereof by the contractor in good faith, where the failure to make full performance can be compensated in damages to be deducted from the price or allowed as a counter-claim, and the omissions and deviations were not willful or fraudulent and do not substantially affect the usefulness of the building for the purposes for which it was intended, the contractor may, in an action upon the contract, recover the amount unpaid of his contract price, less the amount allowed as damages for the failure in strict performance.'' (P. 289.)

It was to this rule that the defendant's offers of proof were addressed. He maintained that if he could show that he had no bad faith, his deviation from the contract would not be ''willful'' within the meaning of the rule. The learned trial judge took the position that ''willful'' meant ''intentional'' (as indeed Black's Legal Dictionary says it does) and that the deviations were obviously ''intentional''; that he would not permit proof of the excuses for nonperformance as he was faced with the prior decision and the law of the case that these deviations constituted breaches of the contract for which the defendant was liable.

Although not expressed in so many words, it appeared to be the theory of counsel for plaintiffs, and acquiesced in by the court, that to permit the defendant so to do would be retrying the matter of liability whereas it was the law of the case that defendant was liable.

The trial court's logic was impeccable. If one of the necessary components of substantial performance was that the deviations from the contract were not willful and if willful means intentional, and if the defendant obviously acted intentionally, then it could not be substantial performance.

In none of the California cases discussing the rule of substantial performance is mention made of whether or not there

is a breach of the contract when there is substantial performance. There is a remarkable lack of definiteness of the legal status of the contract vis-a-vis the legal status of the contracting parties.

In *J. Musto etc. Co.* v. *Pacific States Corp.*, 48 Cal.App. 452 [192 P. 138], the problem came up as a matter of pleading and findings. Plaintiff, the contractor, had alleged full performance of the contract. He proved substantial performance. The court made detailed findings, perhaps probative, that showed substantial performance by plaintiff and the amount of recoupment by defendant and then made an ultimate finding that the work was done in accordance with the contract.

Defendant insisted on reversal. The court said: "Since a substantial performance is performance (*Rowe* v. *Gerry*, 112 App.Div. 358 [98 N.Y.Supp. 380]), and all that is required to sustain an allegation of performance, and since the probative findings referred to show such performance, it follows that instead of being inconsistent with the allegation of full performance, the findings to that effect are in full accord with and support the same." (P. 458.)

If "substantial performance" is "performance" then, in the instant case, the ruling that the contract had been breached would seem to preclude the defendant from advancing substantial performance at the second trial.

In addition to the difficulties created for the defendant's theory of substantial performance by the logic of the trial judge's position and by the Musto case, he was faced with *Perry* v. *Quackenbush*, 105 Cal. 299 [38 P. 740]. In appellant's reply brief he dismisses the case, claiming it is not applicable because it is a contractor's action for compensation without any cross-complaint for damages.

Appellant is in error. It was a suit by the purchaser against the contractor, to cancel a note and mortgage given defendant as consideration for building a house.

The trial court in the Perry case found, in effect, that there had not been substantial performance. After an extended discussion of the equitable rule of substantial performance the court said: "Since the rule as to what shall constitute performance has become so indefinite, it is an important consideration, in determining whether there has been a substantial performance, that the deviations are so slight that they might have been made by one who was honestly endeavoring to comply with his contract.

"Good faith, however, on the part of the contractor is not

enough. The owner has a right to a structure in all essential particulars such as he has contracted for, and to authorize a court or jury to find that there has been a substantial performance it must be found that he has such a structure. The court cannot say that any thing is immaterial which the parties have made material by their contract. One has the right to determine for himself what he deems a good foundation or what materials he desires to be used, and if he contracts for them neither the contractor nor the court has the right to compel him to accept something else which may be shown by the witnesses to be just as good or even better.'' (Pp. 309-310.)

Another hurdle facing the defendant in his attempt to invoke the value rule as the measure of damages based on an alleged substantial performance of the contract is that the degree of deviation must be minor. In the Thomas Haverty Company case, *supra*, the court, in analyzing the rule of substantial performance, and its growth, uses the word ''trivial'' to describe the degree of deviation that is permitted. The word ''trivial'' is used in the same way in the Corpus Juris Secondum statement of the rule of substantial performance, section 509, Contracts, page 1087 of Volume 17. The Musto case, *supra*, also uses the word trivial to describe the permissible deviations.

The trial judge time and again considered the application of the component of triviality and repeatedly pointed out that these were major deviations, not trivial.

It is difficult to see how deviations major enough to constitute a breach of the contract could be, in any semantic or actual sense, trivial.

The defendant repeatedly offered to prove that the deviations from the contract had been in good faith, either by direct proof thereof or the negative thereof, by proving that the deviations were not willful. At the oral argument on appeal defendant's position was that the cases used willful or intentional in the sense of being wanton or almost intentional disregard of the other person's rights; not an intentional adjustment to something that makes performance difficult or impossible.

Can there be ''good faith'' where there have been deviations from the contract sufficient to constitute, as a matter of law, breaches of the contract?

At 6 American Law Reports, 137 there is an annotation entitled ''Wilful or intentional variation by contractor from

terms of contract in regard to material or work as affecting measure of damages.''

All the cases in the annotation (California, D.C., Mass., Minn., Mont., New York, N.D., Penn.) (the California case was *Perry* v. *Quackenbush, supra*) indicate that the majority rule is that whether or not the deviation from the contract was intentional is relevant in determining if there has been substantial performance. They do not indicate that there need be malice or fraud on the part of the contractor to show a lack of substantial performance, nor that the absence of such a finding alone would entitle the contractor to a different measure of damages.

Tracing the annotation through the American Law Reports Blue Book, we find the 1941 California case of *Henderson* v. *Oakes-Waterman Builders,* 44 Cal.App.2d 615 [112 P.2d 662], cited as part of the annotation. One of the reasons this is of especial interest is that *Henderson* v. *Oakes-Waterman, Builders,* was cited to the trial court in the second trial and relied upon, in part, by him.

These cases hold there cannot be the ''good faith'' required by the substantial performance rule if there have been willful and intentional major deviations from the terms of the contract.

There is no question that the defendant's position was and is that although he did not do what was called for, he did something equally as good and that that was substantial performance of the contract.

No case was cited by defendant, and none found, that held that major deviations from the contract, that had been held to constitute a breach of the contract, could constitute substantial performance.

We hold that under the law of the case, and the factual developments, including the facts defendant offered to prove the defendant was not entitled to prove or attempt to prove, substantial performance of the contract on his part.

The above holding does not, however, dispose of the appeal. In his reply brief, defendant advanced another theory as to why he was entitled to instructions on the value theory instead of, or at least alternatively to, the cost theory.

On appeal, the defendant, to all intents and purposes, abandoned his contention that he should have been permitted to prove substantial performance, and claims the right to prove lack of willfulness for another reason. At the oral argument, defendant said: ''If there is an inexcusable or will-

ful violation, then the cost of reconstruction is the measure of damages, no matter how high. If there is not a willful violation, then the cost of reconstruction is the measure of damages, unless it is disproportionately high—I will come to that in a moment—in which case, if it is disproportionately high, and there is no willful breach, the measure of damages is the difference in value between the houses as constructed and as they should have been constructed.''

Nowhere in the cases cited by defendant, or in any cases or authorities found by the court was there found a rule expressed in exactly this way. In the books there are many expressions of what circumstances or set of circumstances are required to ''trigger'' the change from the cost rule to the value rule.

Professor Williston, in his work on Contracts (revised edition), section 1363, pages 3825-3826 of volume 5, advances a rule that does not require ''good faith'' or ''lack of willfulness''; only requiring that the defect not be remediable from a practical standpoint to ''trigger'' the change. The Restatement of Contracts, section 346, pages 572-573, does not require good faith or lack of willfulness but does require a showing of ''unreasonable economic waste.''

Corbin on Contracts, volume 5, page 408, sections 1089 et seq. states that the cost theory prevails ''if this is possible and does not involve unreasonable economic waste'' (p. 409). The author goes on to say, at page 410: ''Without question, the contract breaker should pay the cost of construction and completion in accordance with his contract unless he proves affirmatively and convincingly that such construction and completion would involve an unreasonable economic waste.''

The defendant does not invoke, or seek to invoke the Williston, Restatement, or Corbin rules but cites, in his Reply Brief, the rule laid down in American Jurisprudence, volume 9, Building and Construction Contracts, section 152, page 89. The full statement of this rule is: ''The fundamental principle which underlies the decisions regarding the measure of damages for defects or omissions in the performance of a building or construction contract is that a party is entitled to have what he contracts for or its equivalent. What the equivalent is depends upon the circumstances of the case. In a majority of jurisdictions, where the defects are such that they may be remedied without the destruction of any substan-

tial part of the benefit which the owner's property has received by reason of the contractor's work, the equivalent to which the owner is entitled is the cost of making the work conform to the contract. But where, in order to conform the work to the contract requirements, a substantial part of what has been done must be undone, and the contractor has acted in good faith, or the owner has taken possession, the latter is not permitted to recover the cost of making the change, but may recover the difference in value. In some jurisdictions, however, it seems to be the rule that the measure of damages for defective work under a building contract is such a sum as is required to make the building conform to the plans and specifications, regardless of whether it is necessary to tear down and reconstruct part of the work already done.''

It would appear that defendant is bound by his theory of the case in the trial court and here on appeal. Proof of lack of willfulness is a necessary component, among others, which he must prove to ''trigger'' the invoking of the value rule, vis-a-vis the cost rule, on which latter the trial judge instructed.

While neither side has come up with a California case in which the upper court reversed or affirmed on the precise narrow point of choice between the cost or value rule of measure of damages, it is clear that in California the difference is understood and applied.

In the leading case of *Thomas Haverty Co.* v. *Jones, supra,* the court at page 296 said: ''We do not think the findings sustain the contention of the defendant that the court measured the damages by the difference in the service value of the building rather than by the difference in the market value thereof. For the defects classed as remediable the damage was measured by the reasonable cost of correction thereof. For the other defects, it is plain that the damages allowed did not consist of the difference in cost, but were measured by the difference between the value of the building with those imperfections and its value without such imperfections. This contention, therefore, is not sustained by the record.''

There is an excellent collection of cases from the various jurisdictions and an annotation on the cost and value theories in 123 American Law Reports 515. It is probably true, as stated therein, that the majority of the jurisdictions use the cost theory vis-a-vis the number of jurisdictions that use the value theory only. However, almost all of the jurisdictions that use the cost theory also present the exception either

in the terms of the Williston, Restatement, Corbin or the American Jurisprudence versions of the rule.

There is an interesting variation on the general rule, to wit, the defendant is entitled to either the cost or value rule, whichever is the lower or less burdensome to him. Corbin, *supra,* refers to the rule and cites *Texas Pacific Coal & Oil Co.* v. *Stuard,* (Tex.Civ.App.) 7 S.W.2d 878 and *Bigham* v. *Wabash-Pittsburg Terminal Ry. Co.,* 223 Pa. 106 [72 A. 318].

*Texas Pacific Coal & Oil Co.* v. *Stuard, supra,* is not authority for the statement, and is distinguishable on a peculiar set of facts. The plaintiff had pleaded and proved that *either of two measures of damages would fully compensate him for his loss* and the court said that under either or both theories the defendant was entitled to have the less expensive chosen.

*Bigham* v. *Wabash, supra,* adopted the measure of damage set out in the earlier Pennsylvania case of *Seely* v. *Alden,* 61 Pa. 302 [100 Am.Dec. 642], which latter case was a *tort case* *for pollution of a stream.* No comment was made re adopting a tort rule for a contract case. In later cases, Pennslyvania followed the general rule.

The applicability of the above minor variant rule to the instant case is that the defendant leans heavily on the New York case of *Bellizzi* v. *Huntley Estates, Inc.* (1955), 1 App. Div. 683 [147 N.Y.S.2d 74, 76]. This case adopts the variant rule. The court said: "The court excluded evidence offered by defendant as to the value of the property, charged the jury that the measure of damages was the cost of making the driveway as the parties agreed, refused to charge that the rule of damages 'is the difference between the value of the building as constructed and its value had it been constructed conformably to the contract or the cost of repairs whichever is the lesser.' In our opinion, such proof was erroneously excluded. The evidence should have been received, and the jury should have been instructed that if there was substantial performance of the whole contract on the part of the defendant, or if there was a breach of the contract by defendant and the failure to perform was not in bad faith, and destruction and reconstruction were necessary to get a driveway as was agreed to be built, the jury could not allow the cost thereof if such cost would exceed the difference between the value of the premises as they were with the driveway as built and the value with a driveway as it should have been built."

The New York court cited the Restatement, Williston, Corbin and the early New York case of *Walter* v. *Hangen,* 71 App.Div. 40 [75 N.Y.S. 683]. As quoted above, it is clear that neither the Restatement nor Williston supports such a variant rule. We have previously discussed the Corbin reference to the variant rule and the paucity in number and lack of real support that his two cited cases give to the variant rule. *Walter* v. *Hangen, supra,* supports the variant rule.

In logic the variant rule would not seem proper and certainly it is by way and far the minority rule.

### Cases Relied on by Defendant

*Walsh* v. *Cornwell,* 272 Mass. 555 [172 N.E. 855]. Defendant relies heavily on this case, arguing that it is peculiarly persuasive under the facts. There, the selling price of the house was $13,400 and the cost of the reconstruction was "at least $4,000.00." Here, the selling price was $12,000 and the jury fixed the cost of reconstruction at $3,950.

The difficulty with the defendant's argument is that the Walsh case did not hold that the cost of reconstruction was so high as to bring into play the value rule.

The auditor (a fact finder) found that because of the defendant's " 'failure to build according to the plans and specifications serious defects resulted in the finished house' " (p. 856 [172 N.E.]) and that " 'it would cost . . . at least $4000.00 to tear down parts of the structure and rebuild it to accord with . . . the contract . . .' " (p. 856 [172 N.E.]), but " 'it would not practicable and economical to make all alterations necessary to make the house conform . . .' " (P. 856 [172 N.E.].)

The court expressly said that the case was not tried or argued on the theory of any " 'intentional departure from the contract in a material matter.' " (P. 857 [172 N.E.].)

The court then applied the value rule, citing some Massachusetts cases and Williston, sections 1480-1483, 1485.

The "trigger" in this case was the finding that it was not " 'practicable and economical to make all alterations . . .' " This would seem quite close to the Williston statement of the rule.

*H. P. Droher & Sons* v. *Toushin,* 250 Minn. 490 [85 N.W. 2d 273]. Here, it was the builder that was suing for the balance of the contract price, the total price being $44,000.

The trial court found that plaintiff did *not* construct the house according to the plans and specifications.

The principal practical difficulty was that a steel pole in the basement which acted as a support for a beam on which the floor joists rested was lower than it should have been.

Plaintiff insisted that he had installed the pole according to the specifications but the trial court findings were against it.

It was uncontradicted that it would cost in excess of $20,000 to repair the house. The court said: "On the cost of repair, James H. Speckmann, Severt Eric Olson, Robert W. Johnson and Henry A. Anderson all testified that, in order to correct the defects existing in the house so as to make it plumb, level, and straight as it should have been built, it would be necessary to jack up the low beam in the basement in the center of the house and that the result of so doing would cause the plaster to crack, parts of the house would have to be rebuilt, and the whole job would require a great deal of work and expense and that in their opinion it would cost in excess of $20,000 to repair the damage. Olson, who is a builder during many years' experience, testified that he would not take the job on a contract for $20,000." (P. 282 [85 N.W.2d].)

The court, after citing the aforementioned rules from the Restatement and from American Jurisprudence said: "It would seem that the better rule and the one followed by a majority of the courts is that, where there is a substantial good-faith effort to perform the contract but there are defects of such a nature that the contract has not been performed according to its terms, which defects can be remedied without the destruction of a substantial part of the building, the owner is entitled to recover the cost of making the work conform to the contract but, where it appears that the cost or remedying the defects is grossly disproportionate to the benefits to be derived therefrom, the owner is entitled to recover the difference between the value of the property as it would have been if the contract had been performed according to its terms and the value in its condition as constructed. Cases such as we have here, where the evidence establishes a substantial good-faith performance, are to be distinguished from those where there has been a wilful failure to perform at all, such as we had in *Groves* v. *John Wunder Co.*, 205 Minn. 163 [286 N.W. 235, 123 A.L.R. 502]."

The case was sent back for retrial on a very confused issue. The trial court, in its *opinion* had indicated it was considering the cost rule as a measure of damages. In its findings it had used the value rule.

The court said (p. 281 [85 N.W.2d]): "In view of the ex-

tensive damage which would have occurred as a result of any effort to correct the defects in this house, it was proper to apply the difference-in-value theory in assessing damages.''

The only evidence put in to support the value rule was that one of the defendants testified that if the house had been built in accordance with the specification it would have been worth $65,000 to $68,000; that as it was constructed it was worth $48,000.

The court sent it back for a retrial in the difference in value.

It would appear that the court applied the majority rule and did not reverse the case because the cost rule had been adopted in a case where the cost of replacement was ''disproportionately high.''

The only case cited by defendant which explicitly states that substantial performance has nothing to do with actions for damages by the owner against the builder is *Karlinski* v. *P. R. & H. Lumber & Construction Co.* (1938), 68 N.D. 522 [281 N.W. 898]. It is unlikely that substantial performance could have been found in that case. The contract was to repair and build an addition to a house, and install a furnace. The defendant cut through some joists, weakening the floor and causing the house to sag, the walls to crack, the stairway and a clothes-chute to sag, and the plaster to crack. The downstairs floors were not level. Some of the upstairs floor boards did not meet. The corner of the house sagged. In an attempt to jack up the house, the cellar wall gave way and collapsed into the basement. The cement in the basement was soft and full of holes. The chimney was cracked on three sides. Nails and joints were uncovered. Plaster fell out. The floors were not scraped. Some of the steps were loose and squeaked. The court held it was error to instruct the jury that the measure of damage was the difference in the value of the house as constructed and as contracted for, and that the jury should have been required to determine whether the defects were remediable, and if they were without taking down and reconstructing a substantial portion of the building, the damages were to be the cost of reconstruction, and if not, the damages were to be the difference in value. This case would appear to follow the Williston rule, not defendant's.

*Hansen* v. *Andersen*, 246 Iowa 1310 [71 N.W.2d 921, 923], quotes the language from 9 American Jurisprudence 89, section 152, which seems to use ''good faith'' as an alternative to ''substantial performance'' to invoke the difference in value rule as to the damages. However, the court apparently be-

lieved this to be a case of substantial performance because it also quoted the language at 9 American Jurisprudence 33, section 43, regarding the measure of damages in a substantial performance case as the same rule ''in a somewhat different form.''

The instant case was tried below and argued on appeal on the basis that the trial court refused to let the defendant prove ''lack of wilfulness.'' In the trial court the defendant wanted to prove lack of willfulness, in the main, to bring himself within the substantial performance rule.

It would appear that defendant seeks to make ''lack of wilfulness'' the same as the good faith in which the defendant contractor is required to have acted under the general rule set forth in American Jurisprudence.

In the leading case of *Thomas Haverty Co.* v. *Jones, supra,* 185 Cal. at 289, the court said that the omissions or deviations must not be ''wilful *or* fraudulent'' (emphasis added). It is true that the court was there talking of the conduct necessary for a contractor to bring himself within the substantial performance rule and not the problem of whether to use the cost *or* value theory.

In *Perry* v. *Quackenbush, supra,* again talking about bringing oneself within substantial performance, the court said the failure must not have resulted from design or bad faith.

One of the obvious deductions from the above two leading California cases is that, in substantial performance cases, the word ''willful'' or ''design'' has no connotations of fraud or bad faith; else there would be no necessity to add the disjunctive of ''or fraudulent'' in the Thomas Haverty case, or of the ''bad faith'' in the *Perry* v. *Quackenbush* case.

The ''lack of wilfulness'' or ''good faith'' that defendant sought to prove would appear to be the negative of the ''fraudulent'' of the Thomas Haverty Company case, *supra,* or the ''bad faith'' of the Perry case, *supra,* and not the negative of the simple willful in the sense of intentional.

The Haverty and Perry cases, although substantial performance cases, are particularly relevent to this discussion as the defendant vigorously contended that, in effect, he can prove substantial performance twice: once in the main case of liability and once in the choice between the cost or value theories as to the measure of damages.

In our previous discussion of whether or not the defendant had the right to prove, or attempt to prove, substantial performance, we found that the majority and better rule is that

there cannot be the "good faith" required by the substantial performance rule if there have been intentional major deviations from the terms of the contract. (See 6 A.L.R. 137.)

We hold that under the law of the case, and the facts proved and offered to be proved, there has been or would be a complete failure to prove, and it would be imposible to prove the "good faith" or "lack of wilfulness" required under the rule contended for by the defendant in the instant case.

In addition, it should be noted that the defendant did not prove, or offer to prove, the other factors of the American Jurisprudence rule, to wit: "a substantial part of what has been done must be undone." To the contrary, defendant's expert witness Albert Leroy testified that it would not be necessary to undo any of the work. He would simply (1) put the missing wood sheathing over the existing exterior stucco and restucco and (2) put plaster over the existing interior boards.

As quoted, Professor Corbin argues that the burden is on the defendant to affirmatively and convincingly prove that economic waste would result from the replacement of the omissions and defects. In all fairness this would appear proper as it is the defendant who is seeking to prove a situation whereby he will get equitable relief from a rule of law. The same reasoning would apply as to proof that a substantial part of what has been done must be undone.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied November 19, 1958, and appellant's petition for a hearing by the Supreme Court was denied December 17, 1958. Carter, J., was of the opinion that the petition should be granted.