[Civ. No. 48566. First Dist., Div. Two. Mar. 25, 1981.]

CECILIA LOUISON, Plaintiff and Respondent, v.
JESSE D. YOHANAN, Defendant and Appellant.

**COUNSEL**

Graham & James, Sam D. Delich and Richard R. Pickard for Defendant and Appellant.

Michael McCloskey for Plaintiff and Respondent.

## Opinion

**TAYLOR, P. J.**—Defendant, J. D. Yohanan, appeals[1] from a judgment (as well as a postjudgment order for attorney fees) entered on a special jury verdict in the amount of $42,500 in favor of plaintiff, C. Louison, in her action for breach of contract for the sale of a commercial building located at 234 Ninth Avenue, San Mateo, California. He contends that: 1) as a matter of law, there was no breach, as the two-party purchase agreement was superseded by the subsequently executed escrow documents required for the three-party tax deferred sale and exchange transaction; 2) Louison's agent had the authority to negotiate the lease addenda; and 3) the court erred by refusing his proffered instruction that an agent can bind his principal. For the reasons set forth below, we have concluded that the judgment and the subsequent order granting Louison attorney fees must be affirmed.

Viewing the record in favor of the verdict and judgment, as we must, the following pertinent facts appear: On September 14, 1976, Louison engaged the services of a real estate broker, Richard E. Ekman, to sell her commercial building at 1623 Pine Street, San Francisco, or to arrange a tax deferred exchange for another parcel of commercial property. At the time of the transaction, Louison was 68 years old. She was a native of China, where she had lived for 56 years; she had the equivalent of a high school education. Yohanan owned a commercial building at 234 Ninth Avenue in San Mateo, and offered it for sale by an advertisement in the San Francisco Chronicle. Around March 8, 1977, Ekman saw the ad and telephoned. In their initial telephone conversation, Yohanan described the property, his asking price of $485,000 and agreed to pay Ekman a 3 percent commission.

On February 4, 1977, Louison accepted an offer from 2000 Union Street, Inc. to purchase her Pine Street property as part of a three-party sale and exchange for tax purposes. 2000 Union Street, Inc. nominated Louco Associates (Louco) as purchaser and allowed 120 days for closing.[2]

---

[1] The notice of appeal indicates that it is also taken from the order denying the judgment notwithstanding the verdict, the order denying the motion for a new trial or in the alternative, a modification of the judgment. As these are interlocutory orders merged in the final judgment, they are not separately appealable and the purported appeals must be dismissed.

[2] A properly structured three-party sale and exchange transaction pursuant to 26 United States Code Annotated section 1031, furnishes tax deferral on any taxable gain

On March 11, 1977, Louison and Yohanan entered into a written "Purchase Agreement and Deposit Receipt" (purchase agreement),[3] which provided that Louison would purchase Yohanan's commercial building for $500,000.[4]

The major cotroversy between the parties focuses on the following provision of the purchase agreement: Page two: "3. During the pendency of this transaction the *Seller agrees that no changes in the existing leases shall be made, nor new leases entered into*, nor shall any substantial alterations or repairs be made or undertaken *without the written consent of the Purchaser*." (Italics added.)

At the time of the purchase agreement, two corporations wholly owned by Yohanan leased the larger unit of 234 Ninth Avenue pursuant to leases scheduled to expire on May 31, 1977, about two and one-half months after the execution of the purchase agreement.

Louison testified that when she met with Yohanan on March 11, 1977, before they signed the purchase agreement, Yohanan told her that he was entering a new three-year lease with his corporations as tenant at 234 Ninth Avenue on terms identical to those of the expiring leases. This was a significant factor in Louison's decision to buy the

---

recognized by the parties involved in the actual exchange of property, until the property received in the exchange is sold. In the instant case, the transaction took place as follows: In the first step, buyer (Louco), purchased parcel B (234 Ninth Avenue) from Yohanan for cash, and received an assignment of the lease on the property. In the second step, Louco transferred parcel B and assigned the same lease to Louison in exchange for parcel A (Louison's Pine Street property). The seller (Yohanan) cashed out and is the only party with a taxable event (*Carlton* v. *United States* (5th Cir. 1967) 385 F.2d 238).

[3]On March 10, 1977, Louison had signed an earlier "Purchase Agreement and Deposit Receipt" offering to purchase the Ninth Avenue parcel for $485,000. Neither the agreement of March 10, 1977, nor that of March 11, 1977, made any reference to new three-year leases for a portion of the Ninth Avenue building to be executed by either Yohanan's corporations as a "condition" of the agreement.

[4]The purchase agreement also provided, so far as pertinent, that: Page one: "2. *Purchaser intends to trade her property* located at 1623-1629 Pine Street, San Francisco, *in order to effect a three-way exchange qualifying as tax deferred* under current IRS statutes [¶] 3. *Paragraph 2 above shall not hinder closing of this transaction in any case and purchaser intends to purchase in any case*." (Italics added.) Despite this provision, Louison understood that the three-party transaction was part of her agreement with Yohanan. Yohanan, pursuant to his agreement with Louison, intended to execute all of the documents necessary to consummate the three-party tax deferred sale and exchange transaction.

property, as the terms of the existing lease were favorable since the tenant agreed to pay the utilities, operating expenses and insurance.

Yohanan denied that the above discussion occurred. Yohanan testified that on March 14, 1977, he received a telephone call from Ekman, who requested the new three-year lease at $3,000 per month to enable Louison to obtain the necessary financing for her purchase of 234 Ninth Avenue. According to Yohanan, Ekman suggested that: 1) after the financing was approved, an addendum could be added to the lease allowing the tenant to terminate the lease upon 30 days notice; 2) as consideration for the termination clause, the monthly rent would be increased to $3,200. (Subsequently, this amount was increased to $3,500 per month pursuant to an agreement between Yohanan and Ekman.)

Ekman denied that Yohanan had executed the three-year lease of March 15, 1977, to facilitate Louison's loan. Ekman testified[5] that the lease was executed by Yohanan to make his property more saleable as 99 percent of commercial property is sold on a leased basis. Ekman believed he was Yohanan's agent for the sale of the property as his commission of $11,250 was paid from Yohanan's funds in escrow.

On March 15, 1977, Yohanan executed a new lease with his corporations for a three-year period at $3,000 per month, with the tenant to pay all utilities and operating expenses for the entire building. The lease contained a renewal clause, giving the tenant the option to renew on the expiration date, 1980. Louison received a copy of the lease on March 17.[6]

Yohanan, however, testified that he had sent the lease to Ekman with a letter dated March 16, 1977, which stated: "Enclosed, please find the newly executed lease between Western Alliance Corporation to myself. The attorney is drawing up the amendment to this lease which will incorporate the thirty-day termination clause." Louison testified that she saw the lease but did not see the letter.

---

[5]Sharp, a loan officer involved in this transaction, denied any necessity for, or any reliance by the lender (Home Savings) on, the March 15 three-year lease for providing Louison with the necessary financing. He indicated that the lease was a "pocket to pocket" lease with a rent higher than the fair market rent.

[6]Yohanan's answer to the amended complaint and his verified answer to interrogatories admitted that he had mailed a copy of the lease to Louison without a cover letter. At trial, Yohanan denied that he had sent a copy of the lease to Louison.

On April 1, 1977, Louison obtained approval of the financing for her purchase. On April 15, 1977, Yohanan executed addendum No. 1 to the March 15 lease, providing that the tenant could give 30 days notice of the termination in consideration for an additional rent of $500 per month.

Louison refused to sign or approve addendum No. 1. Ekman testified that: 1) Louison indicated that she would not go through with the purchase if addendum No. 1 remained part of the transaction; 2) he specifically told her that pursuant to the terms of her agreement with Yohanan, the addendum was not valid without her signature.

On April 15, 1977, Yohanan sent a copy of addendum No. 1 to Mr. Croft, the escrow officer, with a cover letter stating: "Enclosed please find leases and addenda to be included in escrow and acknowledged by the buyer." Yohanan admitted that his lawyer had advised him to have the escrow officer obtain Louison's acknowledgement.

Croft testified that he received both documents on April 18, 1977, but that he did not place either the lease or addendum No. 1 with the escrow documents. On the same day, Croft returned the entire packet to Yohanan, at the request of Ekman. Croft never received Louison's acknowledgement of these documents. After Croft had returned these documents to Yohanan on April 18, 1977, Croft did not recall ever placing addendum No. 1 with the escrow documents.

As to addendum No. 2, Croft testified that he did not recognize it and did not recall depositing the document in escrow. Croft indicated that the logical explanation for the rental figure of $3,500 in the assignment to Louco and the escrow disbursement schedule was verbal information from Yohanan.

Yohanan testified that on the same day, April 18, Ekman told him that: 1) Louison was unhappy with the lease, including addendum No. 1; 2) she wanted a direct lease from Yohanan's corporation. Such a direct lease was promptly prepared. Four days later (April 22), Ekman notified Yohanan that the parties would have to return to the terms of the March 15 lease, as the direct lease between Louison and Yohanan's corporations would not fit the three-party sale and tax deferred exchange transaction.

On the morning of April 25, 1977, Yohanan delivered the lease and addendum No. 1 to Croft at Founders Title Insurance Company (title company) and thereby deposited these documents in escrow. Yohanan further testified that on the afternoon of April 25, 1977, Ekman telephoned to tell him that Louison would not agree to a lease with addendum No. 1. Her attorney had advised her that with addendum No. 1, there was only a month-to-month tenancy. Yohanan then offered, and Ekman accepted, a second addendum (No. 2) providing a penalty payment of $5,000 by the tenant to Louison if the 30-day termination clause of addendum No. 1 was exercised in six months or less.

Yohanan stated that on April 26, 1977, he delivered addendum No. 2 to Croft and thereby deposited that document in escrow. At this time, Yohanan signed the papers necessary to sell the Ninth Avenue building to the third party (Louco) and to close the escrow, including the assignment to Louco of the lease which provided for rent of $3,500 a month; this assignment was dated April 26, 1977.

On April 27, 1977, Louison and Ekman came to the title company to sign the documents necessary to close escrow. Croft overheard a discussion between Louison and Ekman indicating Louison's concerns about the termination clause.

Louison testified that when she examined the escrow file, she found the lease of March 15, 1977, but did not find addendum No. 1 with its 30-day termination clause or any other addendum to the lease. She would not have signed the final papers if addendum No. 1 had been included. She also did not recall that anyone had discussed addendum No. 2 with her before she signed the closing papers. Louison denied that she had been instructed by Ekman that she would receive $3,500[7] a month in rent if she approved addendum No. 1 with its 30-day termination clause. She saw no amendments to the lease in the escrow file. Ekman testified that he had no knowledge that any amendments to the lease of March 15, had been deposited in escrow at the time the parties signed the final papers.

The escrow closed on May 4, 1977, approximately six days after Louison signed the closing documents. On May 9, 1977, the title company mailed certain escrow documents to Louison, including the March 15 lease with addenda Nos. 1 and 2.

---

[7]As indicated above, the $3,500 figure was in the assignment to Louco and the escrow disbursement schedule.

Croft testified that additional documents could have been placed into the escrow file between April 26, when Louison signed the papers, and May 9, when the documents were mailed to her. Croft, however, could not recall whether he had received additional documents for the escrow from Yohanan after April 26, 1977.[8] After addendum No. 1 had been returned to Yohanan, Croft did not recall ever placing it with the escrow documents. He also did not recognize addendum No. 2, had no recollection of it or placing it with the escrow documents. He did not know whether either addendum was in the escrow on April 28, 1977, when Louison signed the final papers to close the escrow.

On May 5, 1977, the day after the escrow closed, Yohanan mailed a notice to Louison that his corporations would terminate their tenancy in the building in 30 days; Yohanan's corporation moved out of the building on June 5, 1977.

Louison sustained the following losses that provided the basis for general damages of $42,500 awarded in this action. The larger unit formerly occupied by Yohanan's corporations remained vacant for three months. The new tenant, Bulloc and Young, was the former occupant of the smaller unit, which then remained vacant for seven months. Bullock & Young agreed to pay the same $3,000 monthly rent as the prior tenant, but refused to pay for the utilities, operating expenses and insurance. Louison also had to pay commissions to the realtors who found both of the new tenants.

The jury by a special verdict found that Yohanan had breached the provision of the purchase agreement (quoted above) which required Louison's written consent for any changes in the existing leases. By an additional special verdict, the jury found that Yohanan had not committed fraud or deceit as to Louison.

Yohanan contends that as a matter of law, there was no breach, as the two-party purchase agreement of March 11, 1977, was superseded by execution of the final escrow documents required to consummate the three-party tax deferred sale and exchange transaction.

Yohanan's contention overlooks the basic principle of contract law that governed the instant transaction. The clause in the purchase agree-

---

[8]Prior to trial, Yohanan's counsel asked Croft to sign a statement under penalty of perjury declaring that Croft had received no additional documents from Yohanan after April 26, 1977. Croft refused to do so.

ment requiring Louison's written approval of any changes in the existing leases was a condition precedent to performance of the contract (*Ross* v. *Harding* (1964) 64 Wn.2d 231 [391 P.2d 526]).

Performance of an act by the vendor or purchaser as a condition precedent to transfer of title is the most common provision in real estate sales contracts. Usually, the vendor has the duty to clear defects of title prior to the payment of the purchase price (see *Leiter* v. *Handelsman* (1954) 125 Cal.App.2d 243, 247 [270 P.2d 563]). Approval or acquisition of favorable leases is also recognized as a typical condition precedent (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 566, pp. 482-483; see also *Mattei* v. *Hopper* (1958) 51 Cal.2d 119, 122 [330 P.2d 625]). ■ Once the contract is performed (i.e., title transfers), the subsequent knowledge of a breach of the condition precedent gives rise to a cause of action for breach of contract (Williston on Contracts (1961) § 666, p. 136). In *Shell* v. *Schmidt* (1958) 164 Cal. App.2d 350 [330 P.2d 817], after a contractor constructed a house without following the specifications, the court concluded that the purchaser was entitled to damages for the cost of reconstruction. Although *Schmidt, supra*, dealt with the issue of substantial performance rather than a condition precedent, the result is analogous to the instant facts. The parties here provided in the purchase agreement that any changes to existing leases would be subject to Louison's approval. Uncontroverted evidence indicated that Louison approved *a* lease when she executed the escrow documents. The only question is whether Louison approved the lease with or without the addenda.

Yohanan erroneously argues that the condition precedent in issue was suspended because performance of the contract was restructured to achieve a three-party sale and exchange, pursuant to Internal Revenue Code section 1031. The provision of the purchase agreement that permitted a section 1031 exchange was not mandatory. The exchange merely provided a vehicle for transfer of title; none of the essential terms and conditions of the purchase agreement were changed, except those necessary to satisfy the requirements of the Internal Revenue Code. We note that Yohanan's reply brief admits that the purchase agreement was enforceable even if the three-party exchange had not occurred. *Rogers* v. *Commissioner* (9th Cir. 1967) 44 T.C. 126, held that the parties were bound by the original option agreement, which was exercised, rather than the subsequent escrow instructions, and that an unexecuted exchange agreement had no tax effect. *Alderson* v. *C. I. R.* (9th Cir. 1963) 317 F.2d 790, is of no help to Yohanan as there the

taxpayer agreed to transfer property to another party for property which the other party did not then own.

■ Thus, the basic issue here was not whether the March 11 contract was superseded by the novation of the parties, but whether there was a breach of the condition precedent requiring Louison's written consent to any changes in the existing leases. Under either approach, the question was one of fact for the jury. As uncontroverted evidence indicated that when Louison executed the escrow documents she approved a lease, the only question is whether she approved the leases with or without the addenda. As indicated above, on this question there was conflicting testimony.[9]

The jury's finding that Yohanan breached the condition precedent could only be based on its belief that Louison neither authorized nor approved the addenda to the lease directly or circumstantially. Louison intended to be bound by the terms of the lease dated *March 15, 1977*, between Yohanan and his tenant corporations.[10] The only issue proffered to the jury pertained to the addenda: addendum No. 1, which provided for an increase in rent and a 30-day termination clause; and addendum No. 2, a $5,000 penalty for exercise of the termination clause within the period specified.

Yohanan testified that he submitted addendum No. 1 to Ekman one month after the lease was signed. Uncontroverted evidence indicated that Louison rejected its terms. Yohanan, however, maintains that the only reason for her rejection was that Louison wanted a direct lease. Whatever her motivation, ample substantial evidence indicates that Louison forcefully rejected addendum No. 1.

Croft indicated that he returned to Yohanan the lease with addendum No. 1 at the request of Ekman. The jury had only Yohanan's

---

[9]Yohanan's repeated assertion that the jury's failure to find him guilty of fraud or concealment nullifies its finding of breach of contract is incorrect. The elements necessary to prove breach of contract are separate and distinct from those necessary to prove fraud. This court will not inquire into a jury's motivation for *not* finding fraud; if there is sufficient evidence to support a finding of breach of contract, the verdict and judgment will be upheld.

[10]Yohanan's contention that Louison's written consent was also required for the March 15 lease is patently without merit. Her written consent was required only for any changes in the existing leases. The March 15 lease merely extended the terms of the existing leases; as indicated above, there was substantial evidence that Yohanan executed the March 15 lease to make his property more saleable.

testimony as to how the lease and the two addenda ended up with the escrow documents. As indicated above, Croft testified that probably he derived the $3,500 rental figure in the escrow disbursement schedule from verbal information provided by Yohanan. Both Croft and Louison were vague as to her knowledge of the new rent amount. Croft, however, testified that he did not know how the addenda got into escrow and that he did not remember seeing them at the time Louison signed the documents and reviewed the file.

As Yohanan correctly points out, uncontroverted evidence indicates that Louison executed the escrow disbursement schedule, which reflected a proration of rent based on the $3,500 per month figure of addendum No. 1. Yohanan maintains that Louison's execution of the schedule with this figure proved that she knew of both addenda and accepted their terms. However, the jury could reasonably view Louison's execution of the escrow disbursement schedule in light of the entire transaction, including her repeated refusal to agree to the 30-day termination clause. Further, given Louison's age and the complexity of the transaction, the jury could also conclude that she was simply mistaken or confused. Thus, the jury properly could infer that Louison neither consented to, nor saw the addenda to the agreement at the time she executed the escrow documents. Likewise, the jury was justified in concluding that there was no novation.[11]

As there was ample substantial evidence to support the verdict and judgment in favor of Louison for Yohanan's breach of the condition precedent, we need not discuss in detail Yohanan's remaining contention on appeal. As to the contention that Ekman, as Louison's agent, had the apparent authority to negotiate the addenda for her, we have indicated that the jury apparently rejected this version and concluded that Ekman was Yohanan's agent. We note, however, the potential dual agency and conflict of interest issues revealed by the instant tax deferred sale and exchange transaction. We recently discussed in detail the fiduciary duties of real estate brokers (*Alhino* v. *Starr* (1980) 112 Cal.App.3d 158, 169-170 [169 Cal.Rptr. 136]). As to Yohanan's contention that the court erred in rejecting his proffered instruction that an agent can bind his principal, the record indicates that Yohanan with-

[11]Yohanan alternatively contends that his renegotiation of the agreement with Ekman was concluded by depositing the lease with addendum No. 1 and a check for $3,500 into escrow on April 25, 1977. This contention is based on the erroneous assumption that Ekman was Louison's agent rather than Yohanan's. As indicated above, Ekman testified that he was Yohanan's agent and received his commission from Yohanan's funds in escrow.

drew his request that the jury be recalled for additional instructions and also withdrew his objection to the instruction given.

Yohanan raises no contentions on this appeal as to the postjudgment order awarding attorney fees and costs to Louison pursuant to Code of Civil Procedure section 1032 (cf. *Hyatt* v. *Sierra Boat Co.* (1978) 79 Cal.App.3d 325 [145 Cal.Rptr. 47]). Although neither party has raised the matter of Louison's attorney fees on this appeal, Louison, as the prevailing party, is also entitled to these.

The judgment on the verdict in favor of Louison and the postjudgment order awarding her attorney fees and costs are affirmed; the appeals from the interlocutory orders merged in the final judgment are dismissed. The trial court is directed also to determine the attorney fees due Louison for this appeal.

Rouse, J., and Miller, J., concurred.