585 P.2d 970

J. B. TRAYLOR, dba Traylor Construction Co., Plaintiff, Counter-Defendant, Respondent, and Cross-Appellant,

v.

HENKELS & McCOY, INC., a Foreign Corp., Defendant, Counter-Claimant, Appellant and Cross-Respondent,

v.

UNITED PACIFIC INSURANCE CO., a Foreign Corp., Defendant.

No. 12325.

Supreme Court of Idaho.

Nov. 8, 1978.

Dale G. Higer of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for defendant, counter-claimant, appellant and cross-respondent.

W. Anthony Park of Park & Meuleman, Boise, for plaintiff, counter-defendant, respondent, and cross-appellant.

SHEPARD, Chief Justice.

This is an appeal from a judgment in favor of plaintiff-respondent Traylor and against defendant-appellant Henkels & McCoy, Inc. in the amount of $103,171.14 which was entered following a jury trial and verdict. Traylor's suit sought damages for nonpayment of construction work performed by him for Henkels & McCoy and for consequential damages to his business caused by that nonpayment. Although Henkels & McCoy contested both liability and damages below, on appeal it is only contended that the damages awarded by the jury were excessive to the extent that they exceeded $39,963.22. We agree and reverse.

In 1974 Traylor submitted a bid to Henkels & McCoy for the cost of digging a trench in which a gas main would be installed. That bid included the cost of backfilling and cleanup work. Henkels & McCoy accepted Traylor's bid. Traylor's bid contained a "rock clause" providing that the contract did not cover the cost of moving any hard rock that might be encountered in the process of excavating the trench. Such rock was in fact encountered by Traylor who then informed Henkels & McCoy. Although the parties did not then agree as to how much Traylor would be paid for removal of the rock, they did agree that Traylor would undertake that work. It was understood that an agreement would be reached at a later time as to how much Traylor would be paid, but no such agreement ever was reached.

After Traylor had excavated the trench, including the removal of the hard rock, but before he completed the cleanup work, Henkels & McCoy became dissatisfied and removed him from the job. Henkels & McCoy completed the job at its own cost and asserted a counterclaim for those costs against Traylor. The jury found against Henkels & McCoy on the counterclaim and no appeal was taken from that determination.

Traylor submitted a bill for $24,831.41 for the additional work involved in removing the hard rock and another bill of $14,593.61

for "extras." The original basic contract price for the excavation of the trench was $34,938.00. Henkels & McCoy rejected both the bill for the rock work and the extras and further refused to pay the sum of $538.20 which was the remaining unpaid balance on the original basic contract.

Traylor sought damages first in the amount of $39,963.22, which comprised the amounts due for the rock work, the extras and the $538.20 unpaid balance on the original basic contract. Traylor sought additional damages for the loss of the good will of his business, loss of the value of his equipment and the loss of future profits as a consequence of the forced liquidation of his business. He asserted that these damages were caused by Henkels & McCoy's failure to pay on the first mentioned claims.

Traylor's action sought recovery on contract and quasi-contract theories. The jury returned a general verdict for $103,171.14 which Henkels & McCoy contends is excessive to the extent that it exceeds $39,963.22. Henkels & McCoy asserts that the balance of the verdict either reflects an improper award of consequential or special damages which may not be had on a contract claim or was the product of passion and prejudice by the jury. In either event, Henkels & McCoy asserts that it is entitled to a new trial on the issue of damages.

■ Idaho is in accord with the orthodox rule that contract damages are recoverable only for the direct consequence of a breach in absence of a special agreement to the contrary. *Olson v. Quality-Pak,* 93 Idaho 607, 469 P.2d 45 (1970); *Lockwood Graders of Idaho, Inc. v. Neibaur,* 80 Idaho 123, 326 P.2d 675 (1958). The rule was stated in *Hadley v. Baxendale,* 156 Eng.Rep. 145, 151 (Ex.1854), in the following manner:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract it-

self, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract. For, had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would be very unjust to deprive them. Now the above principles are those by which we think the jury ought to be guided in estimating the damages arising out of any breach of contract."

 It is clear in the instant case that the damages sought by Traylor in excess of $39,963.22 are not such as may be expected to ordinarily result from the breach of a contract to excavate a trench. Henkels & McCoy might, however, be liable if, according to the second principle set forth in *Hadley v. Baxendale,* those damages were "in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." 156 Eng. Rep. at 151. Traylor does not seriously contend that those damages were in contemplation of the parties at the time they made the basic contract and we deem it to be a somewhat remote possibility that Henkels & McCoy would enter a contract conditioned upon its acceptance of liability for the liquidation of Traylor's business in the event of breach by Henkels & McCoy. Traylor also concedes that no contract arose from the agreement that Traylor would do the rock work. The parties at the time of the agreement to do the rock work left to later negotiations the question of compensation due to Traylor for the work. Such an agreement was never reached. In the absence of an agreement between the parties regarding the amount to be paid to Traylor, there was failure to agree on an essential term of the contract. Such an agreement is too indefinite to enforce. Traylor is not, however, without a remedy since he is entitled to recover the reasonable value of the work he performed at Henkels & McCoy's request. 1 A. Corbin, Contracts § 99, at 445 (1963).

 Traylor rests his claim for consequential damages on the assertion that Henkels & McCoy had agreed to take responsibility for the financial stability of the business at the time of the modification of the basic contract. The parties are, of course, free to modify a contract. *Belts v. State ex rel. Department of Highways,* 86 Idaho 544, 388 P.2d 982 (1964). If the parties contemplated liability for special damages (for allegedly forcing the liquidation of Traylor's business) at the time the contract was modified, then the defaulting party must accept the consequences of that agreement. Traylor contends that there was a series of contract modifications regarding extras and that at some point Henkels & McCoy agreed with him for the performance of the extras, knowing full well that Traylor was depending upon the payment therefor in order to remain in business. The record does not sustain that contention.

 We hold that the jury was not sufficiently instructed on the damages issue. If the jury were to allow Traylor's claim for damages to his business, the jury had to find that at the time Traylor agreed with Henkels & McCoy for the performance of extra work it was in the contemplation of *both* parties that if Henkels & McCoy breached its obligation to pay, it was fore-

seeable that Traylor would lose his business and have to sell his equipment. This is in accord with the general rule in contract cases that an award of damages for injury to the business can only be sustained if the jury finds that such harm was contemplated at the time the contract was formed as a foreseeable result of its breach. While one instruction of the court did state that recoverable damages must have been in the contemplation of the parties at the time the contract was formed, two previous instructions did not suggest that such a finding was necessary as to Traylor's claim for damages caused to his business. We conclude that the trial court improperly instructed the jury on the damages recoverable for injury to business.

■ It appears clear that the jury could have awarded damages due for the rock work, the extras and on the basic contract for $39,963.22, but that amount is exceeded in the jury's verdict by some $63,207.92.

That amount could only have been awarded to compensate Traylor for the injury to and loss of his business and loss of future profits. The cause must therefore be reversed. The cause is reversed and remanded to the trial court for the entry of a remittitur reducing the judgment to the sum of $39,-963.22, and if said remittitur is not accepted by the plaintiff-respondent J. B. Traylor, dba Traylor Construction Co., that a new trial be granted on the question of damages. Costs to appellant.

McFADDEN, DONALDSON, BAKES and BISTLINE, JJ., concur.