795 P.2d 319

**W. Eugene STRATE and Alice Strate, Plaintiffs–Appellants–Cross–Respondents,**

**v.**

**CAMBRIDGE TELEPHONE COMPANY, INC., Defendant–Respondent–Cross–Appellant.**

**No. 18120.**

Court of Appeals of Idaho.

July 19, 1990.

Tway & Rosenheim, Boise, for plaintiffs-appellants-cross-respondents.    William   J. Tway  argued.

Lary C. Walker, Weiser, for defendant-respondent-cross-appellant.

BURNETT, Judge.*

This appeal and cross-appeal arise from a contract dispute. The appellants, Eugene and Alice Strate, maintain that the district court should have awarded them consequential damages for a breach of contract. The cross-appellant, Cambridge Telephone Company, argues that the district court erred in finding that the contract contained an oral modification and in failing to find that the contract was tainted by fraud or misrepresentation. For reasons explained below, we affirm the district court's judgment.

I

The facts are as follows. In early 1985, the Strates owned all the shares of Teleconn, Inc., a business involved in the sale and maintenance of telephone systems in the Boise area. Eugene Strate was Teleconn's chief executive officer and manager. Cambridge Telephone Company, an enterprise serving rural communities in southwestern Idaho, expressed an interest in purchasing Teleconn. In April, 1985, the Strates and officers of Cambridge entered negotiations for the sale of Teleconn. Cambridge representatives visited Teleconn premises and discussed Teleconn's operations. On April 23, the parties entered into formal negotiations based upon information contained in Teleconn's financial records ending in March, 1985. As a result of these negotiations, the parties signed a contract for sale of all outstanding shares in Teleconn. The relevant provisions of the contract may be summarized as follows:

A. The Strates would endorse and deliver all their shares of Teleconn stock to Cambridge on May 1, 1985.

B. Cambridge would pay $100,000 in cash to the Strates on May 1st.

C. The stock purchase price would be adjusted to the extent that the value of inventory and accounts receivable, less

corporate debts, turned out to be greater or lesser than a postulated value of $49,000. The parties would work cooperatively to establish the actual net value.

D. Within sixty days after closing, Cambridge would arrange for all financing institutions to release the Strates as individual guarantors of Teleconn obligations.

E. For fifteen days after closing, Mr. Strate would be available to assist Cambridge's officers in operating and managing Teleconn's business.

F. The Strates would hold Cambridge harmless in any pending or future "legal actions" arising out of business conducted by Teleconn prior to the sale.

The contract further provided that closing would occur on May 2. On that day Cambridge's president, Kermit Wiggins, went to the office of Teleconn's accountant to obtain certain financial statements. Ordinarily such statements were prepared during the middle of the month. Consequently, the accountant was under pressure to complete the documents in time for the closing. Wiggins had to wait for the papers. When he and other Cambridge officers arrived for the closing, they were late. To make matters worse, Mr. Strate had just received the unfortunate news that his father, who lived in Arkansas, was critically ill. Mr. Strate made arrangements to fly to his father's home later that day.

The Cambridge group had intended to spend a considerable period of time at the closing discussing price adjustments. They were concerned over what they considered to be major discrepancies in the inventory and financial records. After some period of discussion, however, it became apparent to Mr. Strate that he would not be able to catch the flight to Arkansas if he became involved in an extended examination of price adjustments. He explained his situation to the Cambridge representatives, and to their attorney, telling them simply that the proposed sale would be cancelled unless

* This opinion was prepared by BURNETT, J., and voted on by the Court prior to his resignation

July 16, 1990.

the parties accepted the contract price without making any adjustments for the net value of the inventory, debt, and accounts receivable. The Cambridge representatives agreed to this proposal. The payments were made and the stock was transferred later the same day.

The Strates had guaranteed two Teleconn bank loans and had secured the guarantees by encumbering certain real estate which they owned personally. As noted above, Cambridge had agreed to release the Strates from such guarantees within sixty days after closing. By July, 1985, Cambridge had failed to arrange for the Strates' release as guarantors. After contacting Cambridge, Mr. Strate was reassured that Kermit Wiggins or Cambridge would become substitute guarantors of the Teleconn loans, but that it was taking time to get the necessary papers together.

In early November, 1985, Strate informed Cambridge that he needed to be released from the guarantee because he wanted to transfer the encumbered property in a separate real estate transaction. Cambridge again reassured him that arrangements were being completed to obtain releases. Nonetheless, on November 7, 1985, Cambridge informed the bank that they would not release the Strates from their guarantees of the Teleconn loans. The bank relayed this information to Strate. When Strate contacted Cambridge, he was informed that Cambridge would not obtain the releases because there were apparent discrepancies in the values ascribed to Teleconn's accounts receivable and the inventory.

After some unsuccessful attempts at settlement, the Strates filed a complaint for breach of contract. They alleged that Cambridge had committed the breach by failing to obtain the promised releases. Shortly before trial, Cambridge produced the releases; but Cambridge counterclaimed, alleging that Mr. Strate had misrepresented the value of the inventory and accounts receivable. At trial on the counterclaim, particularly during closing argument, Cambridge characterized the case as one of fraud.

The trial court eventually concluded that Cambridge did indeed breach the contract by failing to obtain timely releases of the Strates' guarantees of Teleconn obligations. However, the trial court denied a claim for consequential damages, arising from financial considerations attributed to the guarantees. The district court held that such damages were not reasonably foreseeable when the parties entered their contract. Consequently, the trial court held that the Strates were entitled only to nominal damages of one dollar. The court also held that the parties had entered into an oral modification of the contract, obviating any adjustments for the net value of the inventory, debt and accounts receivable. Therefore, in regard to Cambridge's counterclaim, the trial court held that the actual net value at closing of the accounts receivable and inventory was immaterial. The court concluded that the Strates' failure to enter into negotiations for a price adjustment was not a breach of the orally modified agreement. The trial court also concluded that any fraud claim was not properly before the court because it had not been properly pleaded. The court added that even if the issue were properly framed, Cambridge had failed to prove the elements of fraud by clear and convincing evidence. This appeal followed.

## II

We now turn to the Strates' contention that the trial court erred in failing to award consequential damages. In Idaho, consequential damages are not recoverable unless they were contemplated by the parties *at the time of contracting.* *Brown's Tie & Lumber Company v. Chicago Title Company of Idaho,* 115 Idaho 56, 764 P.2d 423 (1988). Consequential damages need not be precisely and specifically foreseen; but they must have been reasonably foreseeable, and within the contemplation of the parties, when the contract was made. *Suitts v. First Security Bank of Idaho, N.A.,* 110 Idaho 15, 713 P.2d 1374 (1985). Whether such damages were reasonably foreseeable and within the contemplation of the parties is a question

of fact. *Traylor v. Henkels & McCoy, Inc.*, 99 Idaho 560, 585 P.2d 970 (1978). On review we will not disturb a factual finding of the trial court if that finding is supported by substantial evidence. I.R.C.P. 52(a); *Jensen v. Westberg*, 115 Idaho 1021, 772 P.2d 228 (Ct.App.1988).

■ Here, the record contains evidence that Cambridge was unaware of the Strates' encumbrance of personal property to secure loans for Teleconn. The evidence indicates that in April and May, 1985, the Cambridge representatives were unaware of any real estate transactions involving the Strates. The separate real estate transaction involving encumbered property was not communicated to Cambridge until November, 1985. Indeed there is little in the record to indicate that this real estate transaction was contemplated, even by the Strates, at the time of contracting. We conclude that substantial evidence supports the trial court's finding that the consequential damages were not reasonably foreseeable, or within the parties' contemplation, when the contract was made. The court did not err in failing to award such damages. We note in passing that the Strates made no claim for punitive damages, based on Cambridge's actions and knowledge of facts *after* the contract was made.

### III

■ Finally, we examine Cambridge's contention that the district court erred when it found that there was an oral modification of the contract. In Idaho, a written contract may be modified by a subsequent oral agreement. *Scott v. Castle*, 104 Idaho 719, 662 P.2d 1163 (Ct.App.1983). Such an oral modification must be proven by clear and convincing evidence. *Resource Engineering Inc. v. Siler*, 94 Idaho 935, 500 P.2d 836 (1972). The question of whether an alleged oral modification has been proven by the required quantum of evidence is one for the trier of fact. Its determination by the trier of fact will not be reversed where it is supported by substantial evidence. *Id.*

■ Here, the court based its finding of an oral agreement on evidence, summa-

rized above, of the events transpiring on May 2, 1985. The court was unpersuaded by Cambridge's argument that the parties merely agreed to postpone any price adjustment to a future date. The trial court's interpretation of events is supported by substantial, albeit disputed, evidence. It is also consistent with the fact that the purchase price was paid, and stock was transferred, on May 2. We will not disturb the court's finding.

■ Cambridge also contends that the court erred when it dismissed the fraud claim. After an examination of the pleadings, the court concluded that there was not a legally sufficient allegation of fraud, either as an affirmative defense or as a counterclaim. The circumstances constituting fraud must be stated with particularity in the pleading. I.R.C.P. 9(b); *Theriault v. A.H. Robins Co., Inc.*, 108 Idaho 303, 698 P.2d 365 (1985). The elements of fraud are: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that the representation will be acted upon in a reasonably contemplated manner; (6) the listener's ignorance of its falsity; (7) the listener's reliance on the truth of the representation; (8) the listener's right to rely on the truth of the representation; and (9) the listener's consequent and proximate injury. *Galaxy Outdoor Advertising Inc. v. Idaho Transportation Department*, 109 Idaho 692, 710 P.2d 602 (1985). In this case, Cambridge failed to mention fraud by name or to allege that the Strates' representations were knowingly false when made. Consequently, we must agree with the trial court that the fraud issue was not framed by an adequate pleading.

■ Of course, an unpleaded issue may be tried with the consent of the parties. I.R.C.P. 15(b). The determination of whether an issue has been tried by consent is a matter for the trial court's discretion. *Lynch v. Cheney*, 98 Idaho 238, 561 P.2d 380 (1977). We will not reverse that determination unless the court's discretion has been abused. *Smith v. King*, 100 Idaho 331, 597 P.2d 217 (1979).

■ Here, the trial court noted that Cambridge presented considerable evidence concerning the value of Teleconn's debt, inventory, and accounts receivable. However, the mere fact that evidence relevant to an unpleaded issue is introduced at trial will not give rise to an inference that the issue was tried by consent, if the admitted evidence was also relevant to a pleaded issue. *Dursteler v. Dursteler,* 108 Idaho 230, 697 P.2d 1244 (Ct.App.1985). In this case the evidence of inventory, accounts receivable and debt values was relevant not only to the purported fraud claim but also to Cambridge's unsuccessful claim that the Strates breached an agreement to negotiate price adjustments after May 2. Accordingly, we conclude that the district court did not abuse its discretion in ruling that the parties did not consent to try the issue of fraud.

■ As noted above, the trial court went on to hold that even if this issue was tried with the implied consent of the parties, Cambridge failed to prove its fraud claim. The court ruled that Cambridge failed to prove by clear and convincing evidence the following elements of its claim: (1) Cambridge's ignorance of the falsity of the representations; (2) Cambridge's reliance on the truth of the representations; and (3) Cambridge's right to rely on the truth of those representations. Failure to prove any essential element of fraud is fatal to the claim. *See Faw v. Greenwood,* 101 Idaho 387, 613 P.2d 1338 (1980); *Smith v. King,* 100 Idaho 331, 334, 597 P.2d 217, 220 (1979). Whether each element has been proven by clear and convincing evidence is for the trier of fact to determine. On appeal that determination will not be reversed unless it is clearly erroneous. The record here clearly demonstrates that Cambridge did not rely on the representations of Mr. Strate. On the contrary, Cambridge made separate examinations of the financial records of Teleconn and had the accounts examined by an independent certified accountant. Because the lack of reliance was sufficient, by itself, to defeat Cambridge's fraud claim, we need not examine the trial court's analysis of remaining elements. We sustain the trial court's dismissal of Cambridge's fraud claim.

The judgment of the district court is affirmed. No costs or attorney fees awarded on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.