67 F.3d 306
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CONSTRUCT TECH CORPORATION, Plaintiff-Appellee-Cross-Appellant,
v.
CITY OF COEUR D'ALENE, Defendant-Appellant-Cross-Appellee.
 Nos. 94-35666, 94-35708.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 10, 1995.
Decided Oct. 3, 1995.
As Amended Nov. 2, 1995.
 
 1
 Before: BEEZER and HAWKINS, Circuit Judges, and TEVRIZIAN,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 This action involves a dispute between the City of Coeur d'Alene ("City") and Construct Tech Corporation ("Construct") regarding the City's termination for default of the Contract between itself and Construct for the construction of Phase 3C of the City's waste water treatment plant ("Plant"). As a result of this termination, Construct filed a complaint seeking (a) reimbursement for services rendered, costs advanced, commitments settled, and profits earned on contract prior to the termination; (b) profits which would have been earned on the remainder of the project had the contract not been terminated; and (c) destruction of the value of its business related to impairment of bonding capacity caused by termination for default and resulting inability to obtain future public works contracts. The City counter-sued Construct for (i) reimbursement for costs to correct defective work; (ii) its increased costs to complete construction of Phase 3C with another contractor; and (iii) damages for delays in putting Phase 3C into service.
 
 
 4
 After a two-week trial, the jury returned a special verdict, (i) finding that the City did not have the right to terminate Construct for default; (ii) awarding Construct $352,992 in damages for pre-termination costs and profits, as well as settlement costs; (iii) finding that the City's termination for default was in breach of the covenant of good faith and fair dealing; (iv) awarding lost profits in the amount of $459,041; and (v) awarding destruction of business damages in the amount of $1,632,283. A judgment was entered on this verdict on May 17, 1994.
 
 
 5
 Both City and Construct subsequently filed motions regarding this judgment. On June 21, 1994, the district court denied the City's motion for judgment as a matter of law, or in the alternative, for a new trial, or to alter and amend judgment. The district court also denied Construct's motion to amend judgment, to the extent it sought prejudgment interest, and granted the motion to the extent it sought reasonable attorney's fees and costs. As a result, the district court filed a judgment on June 21, 1994 awarding Construct a total of $2,865,373.68 ("Judgment"). Both parties timely filed notices of appeal from the district court's ruling and subsequently entered Judgment. We have jurisdiction under 28 U.S.C. Sec. 1291.
 
 
 6
 I. The district court did not abuse its discretion in denying the City's motion for new trial based on its contention that the district court should not have permitted Construct to present a claim to the jury for destruction of business damages.
 
 
 7
 A district court's decision to deny a party's motion for a new trial is reviewed for abuse of discretion. Hard v. Burlington N.R.R., 812 F.2d 482, 483 (9th Cir.1987). A trial court abuses its discretion if its decision is based on an erroneous interpretation of the law. Northern Alaska Envt'l Ctr v. Lujan, 961 F.2d 886, 889 (9th Cir.1991). "We review a district court's determination of state law de novo." Brooks v. Hilton Casinos Inc., 959 F.2d 757, 759 (9th Cir.), cert. denied, 113 S.Ct. 300 (1992).
 
 
 8
 A. The district court properly set forth the standard for consequential damages under Idaho Law.[1]
 
 
 9
 The City contends that it is entitled to a new trial because consequential damages were not recoverable in the instant case as a matter of law. The City argues that a party may only recover consequential damages when the evidence shows that such damages were actually within the contemplation of the parties at the time of contracting.
 
 
 10
 The Idaho Supreme Court has most recently set forth the Idaho rule of law for consequential damages in Suitts v. First Security Bank of Idaho, N.A., 713 P.2d 1374 (Idaho 1985). In Suitts, the Idaho Supreme Court stated that consequential damages are available if such damages
 
 
 11
 "may reasonably be supposed to have been within the contemplation of the parties at the time of making the contract as a probable result of a breach thereof, or, as sometimes stated, such as were reasonably foreseeable and within the contemplation of the parties at the time they made the contract."
 
 
 12
 Suitts, 713 P.2d at 1381 (quoting C.J.S., Damages, Sec. 24, pp. 662-66).
 
 
 13
 The City contends that the correct standard for consequential damages is a subjective one. In other words, Construct cannot recover damages for the destruction of its bonding capacity unless it can prove, among other things, that the City actually foresaw this consequence at the time of contracting. In support of its argument, the City notes that consequential damages are not available if the special circumstances giving rise to the damages were wholly unknown to the party breaching the contract. See Traylor v. Henkels & McCoy, Inc., 585 P.2d 970 (Idaho 1978).
 
 
 14
 In contrast, Construct maintains that the consequential damages standard is objective. Therefore, a district court may properly submit a consequential damages claim to the jury if the aggrieved party sets forth evidence indicating that the breaching party either did foresee or should have foreseen that the consequential damages would reasonably result from the breach. In support of this contention, Construct notes that "[t]he damages for which compensation is sought need not have been precisely and specifically foreseeable." Suitts, 713 P.2d at 1381, Strate v. Cambridge Tel. Co., 795 P.2d 319 (Idaho Ct.App.1990).
 
 
 15
 In Traylor v. Henkels & McCoy, Inc., 585 P.2d 970 (Idaho 1978), the Idaho Supreme Court affirmed a decision not to award consequential damages for business destruction because
 
 
 16
 Traylor does not seriously contend that those damages were in contemplation of the parties at the time they made the basic contract and we deem it to be a somewhat remote possibility that Henkels & McCoy would enter a contract conditioned upon its acceptance of liability for the liquidation of Traylor's business in the event of breach by Henkels & McCoy.
 
 
 17
 Id. at 972. The Traylor court further noted that
 
 
 18
 [i]f the jury were to allow Traylor's claim for damages to his business, the jury had to find that at the time Traylor agreed with Henkels & McCoy for the performance of extra work it was in the contemplation of both parties that if Henkels & McCoy breached its obligation to pay, it was foreseeable that Traylor would lose his business and have to sell his equipment.
 
 
 19
 Id. at 972-73.
 
 
 20
 The consequential damages rule contained in the Idaho Commercial Code[2] was similarly applied in Cannon Builders, Inc. v. Rice, 888 P.2d 790 (Idaho 1995). In Cannon Builders, a plaintiff highway contractor was unable to finish a project in a timely fashion, as required by the main construction contract, because the defendant subcontractor failed to provide concrete guardrails to the plaintiff contractor. As a result of the subcontractor's breach, the contractor completed the highway project 35 days late and was therefore obligated to pay $24,000 in liquidated damages pursuant to the main construction contract. The contractor sued the subcontractor for breach of contract and the jury awarded damages for, among other things, the $24,000 in liquidated damages incurred as a result of the subcontractor's failure to timely deliver the concrete guardrails.
 
 
 21
 The Idaho court of appeals upheld this award, finding that the jury was presented with sufficient evidence to conclude that the defendant subcontractor had reason to know of the liquidated damages clause in the main construction contract. Id. at 794. At trial, the contractor presented testimony showing that the parties discussed the liquidated damages clause at the time the agreement was reached. Id. Additionally, the defendant was aware that plaintiff's time for performance was quickly running out. Id.
 
 
 22
 In Strate v. Cambridge Tel. Co., 795 P.2d 319 (Idaho Ct.App.1990), the Idaho court of appeals upheld a trial court's decision not to award consequential damages flowing from a real estate contract with a third party because there was little in the record to indicate that the real estate transaction was contemplated by either the defendants or the plaintiffs at the time of contracting. Id. at 323. Similarly, in Brown's Tie & Lumber Co. v. Chicago Title Co., 764 P.2d 423, 428 (Idaho 1988), the Idaho Supreme Court upheld a trial court's decision to exclude evidence of business losses allegedly incurred because of a party's breach of a title insurance contract. The court found that there was nothing in the contract to suggest that such damages were within the contemplation of the parties at the time of contracting. In fact, the court noted that, to the contrary, the contract included a provision whereby the defendant only agreed to compensate for certain losses at a certain amount.
 
 
 23
 In the instant case, the district court issued the following jury instruction in connection with Construct's request for consequential damages:
 
 
 24
 If you decide for one party on the question of liability with respect to its claim, you must then fix the amount of money that will reasonably and fairly compensate it for any of the following elements of damage proven by the evidence to have resulted as a consequence of the other party's breach and to have been reasonably within the contemplation of the parties, at the time the contract was made, as being the probable result of the breach of the contract.
 
 
 25
 1. ... those losses and expenses which may reasonably be supposed to have been in contemplation of both parties as a probable result of such breach when the contract was made. ....
 
 
 26
 In determining whether damages were reasonably foreseeable, you should consider ... any special or unusual facts the parties knew or should have known.
 
 
 27
 Jury Instruction No. 14 (emphasis added).
 
 
 28
 The City contends that this instruction improperly sets forth an objective standard for consequential damages. However, contrary to the City's position, Idaho law does not require a finding of actual knowledge in order to award such damages. Rather, if a jury can reasonably conclude that such damages were within the parties' contemplation, damages are appropriate. We find that Jury Instruction 14 as given sets forth the correct standard under Idaho law regarding consequential damages.
 
 
 29
 B. There is sufficient evidence in the record to support the jury's decision to award Construct consequential damages for the destruction of its business.
 
 
 30
 "Challenges to the sufficiency of evidence, and the denial of a motion for judgment notwithstanding the verdict, are reviewed de novo to determine if the plaintiff's claims were supported by substantial evidence. Erickson v. Pierce County, 960 F.2d 801, 804 (9th Cir.), cert. denied, 113 S.Ct. 815 (1992). "Substantial evidence means 'such relevant evidence as reasonable minds might accept as adequate to support a conclusion.' " Ingram v. Acands, Inc., 977 F.2d 1332, 1340 (9th Cir.1992). Therefore, "[w]hen there is sufficient evidence before the jury on a particular issue, and the instructions of law on the issue are correct, the jury's verdict will not be disturbed." Id.
 
 
 31
 1. There is sufficient evidence in the record to support a
 
 
 32
 finding that Construct's loss of bonding capacity can be
 
 
 33
 reasonably supposed to have been in the contemplation of the
 
 
 34
 parties at the time of contracting.
 
 
 35
 The City claims that the jury's verdict must be overturned because there is not sufficient evidence in the record to support the conclusion that the City actually contemplated Construct's possible loss of bonding capacity at the time of contracting. However, as previously discussed, Idaho law only requires a party to set forth evidence from which a juror could "reasonably suppose" that such consequences were within the contemplation of the parties at the time of contracting.
 
 
 36
 Construct maintains that a reasonable juror could find that the negative impact of a default termination on a construction company's bonding capacity was in the contemplation of the parties at the time of contracting. The record contains evidence indicating that this fact is common knowledge in the construction industry. On direct examination, Craig Hurst, an independent insurance agent whose job responsibilities include writing surety bonds, stated that he has learned through his experience in the construction industry that there is no bonding capacity once a construction company has been terminated for default.
 
 
 37
 Additionally, the jury could reasonably infer from the testimony of Sid Fredrickson, a waste water superintendent for the City, that it is common knowledge in the construction industry that terminating a contractor for default could have an adverse impact on the contractor's bonding capability, depending on the size of the company and the job. Finally, Russell Brown, a civil engineer, also testified that it is common knowledge in the construction industry that termination for default negatively affects a contractor's bonding capacity.
 
 
 38
 Based on this collective testimony, we find that the jury's conclusion that such damage could be reasonably supposed to have been within the contemplation of the parties at the time of the making of the contract is supported by substantial evidence.
 
 
 39
 2. The record contains sufficient evidence to support the
 
 
 40
 jury's finding that the City's default termination
 
 
 41
 of Construct caused the destruction of
 
 
 42
 Construct's bonding capacity.
 
 
 43
 The City also contends that there is no substantial evidence in the record to support the conclusion that the City caused the destruction of Construct's bonding capacity. The City notes that, pursuant to Wing v. Hulet, 684 P.2d 314 (Idaho Ct.App.1984), an award of damages is only appropriate if there is sufficient evidence to prove that the loss was caused by the defendant's conduct. In Wing, the court of appeals also noted that, although proof of damages in a breach of contract action does not need to be mathematically precise, there
 
 
 44
 must be sufficient to avoid speculation among multiple causes. Where causation is to be inferred from circumstantial evidence, the trier of fact must be able to find, reasonably, that the inference linking the defendant's conduct to the damage is more probable than an inference connecting the loss to other causes.
 
 
 45
 Id. at 320-21 (citation omitted).
 
 
 46
 The record in this case contains both circumstantial and direct evidence from which the jury reasonably concluded that the default termination of the Contract caused Construct's subsequent inability to obtain bonding. As previously discussed, evidence was presented at trial indicating that it is generally known in the construction industry that default termination will negatively affect a contractor's future bonding ability.
 
 
 47
 Additionally, Hurst, the insurance agent, testified that the City's termination actually put Construct's bonding capacity in jeopardy. After the date Construct was terminated by the City, Aetna, Construct's bonding agent for the Plant project, stated that it would not provide Construct with anymore bid bonds. Further, Randy Dunn, a Certified Public Accountant specializing in the construction industry, stated that Aetna's decision to discontinue its bonding service to Construct after the default termination was consistent with his experience in the construction industry.
 
 
 48
 Notwithstanding this testimony, the City contends that some of the evidence in the record regarding this issue is inadmissible. For example, Hurst testified that the City's termination of Construct was the single event which destroyed Construct's bonding capacity. The City maintains that the district court's decision to overrule its objection to this testimony was in error because it constituted impermissible hearsay or speculation pursuant to Rules 602[3] and 801[4], Federal Rules of Evidence.
 
 
 49
 "Evidentiary rulings by a district court are not reversible absent clear abuse of discretion". Monotype Corp. v. International Typeface Corp., 43 F.3d 443, 448 (9th Cir.1994) (quoting McGonigle v. Combs, 968 F.2d 810, 818 n. 6 (9th Cir.1992)). Further, "this court cannot reverse absent some prejudice". Jauregui v. City of Glendale, 852 F.2d 1128, 1132 (9th Cir.1988) (quotations omitted). In order to show reversible prejudice "a party must demonstrate that the allegedly erroneous evidentiary ruling more probably than not was the cause of the result reached by the court." Id. (citing Kisor v. Johns-Manville Corp., 783 F.2d 1337, 1340 (9th Cir.1986)).
 
 
 50
 Even assuming that the district court impermissibly admitted this testimony, we do not find that the City suffered actual prejudice as a result of this ruling. The record contains sufficient circumstantial evidence from which the jury reasonably concluded that the City's termination of the Contract led to the destruction of Construct's bonding capacity. As previously discussed, it was established that it is well-known in the construction industry that default termination negatively impacts bonding capacity.
 
 
 51
 Accordingly, this Court refuses to disturb the district court's evidentiary ruling with respect to Hurst's testimony regarding Construct's loss of bonding capability.
 
 
 52
 II. The district court did not abuse its discretion in denying the City's motion for a new trial because the jury's determination that the City breached the covenant of good faith and fair dealing is supported by substantial evidence.
 
 
 53
 As previously stated, a jury verdict may be set aside if it is not supported by substantial evidence. Erickson v. Pierce County, 960 F.2d 801, 804 (9th Cir.1992). "Substantial evidence means 'such relevant evidence as reasonable minds might accept as adequate to support a conclusion.' " Ingram v. Acands, Inc., 977 F.2d 1332, 1340 (9th Cir.1992).
 
 
 54
 The City argues that reasonable minds could not have found that its decision to terminate Construct breached the duty of good faith and fair dealing. We disagree.
 
 
 55
 At trial, it was established that the City discussed "pulling the plug" on Construct in November of 1991. These discussions occurred several months before the contract was terminated for default in June of 1992. William Martel, an expert witness on the Project, stated that the Project engineer appeared to have "almost a pattern of vendetta towards the contractor just to make his life totally miserable. In 34 years, I have never seen anything like it."
 
 
 56
 Similarly, Russell Brown, a civil engineer, stated that it was his opinion that the relationship between Construct and the City was adversarial because the City and its engineering firm had made no effort to establish a good working relationship with Construct. Further, during this time period, Martel claimed that Construct was under a "constant barrage of reject and resubmit", even for the smallest things.
 
 
 57
 The record contains sufficient evidence from which a reasonable juror could conclude that the City acted in bad faith. Accordingly, we find that the district court did not err in denying the City's motion for a new trial for the reasons stated.
 
 
 58
 III. Absent a clear abuse of discretion, evidentiary issues by the district court are not reversible.
 
 
 59
 As previously stated, "[e]videntiary rulings by a district court are not reversible absent clear abuse of discretion". Monotype Corp., 43 F.3d at 448. This court will not reverse an evidentiary ruling absent a showing of prejudice. Jauregui, 852 F.2d at 1132. In order to show reversible prejudice "a party must demonstrate that the allegedly erroneous evidentiary ruling more probably than not was the cause of the result reached by the court." Id. (citing Kisor v. Johns-Manville Corp., 783 F.2d 1337, 1340 (9th Cir.1986)).
 
 
 60
 A. The district court did not abuse its discretion by excluding all evidence of Construct's previous bonding problems.
 
 
 61
 At trial, the City attempted to introduce evidence of Construct's prior bonding problems and past difficulties on public works contracts. For example, CNA, a surety underwriter, apparently had a public works surety bond relationship with Construct from the late 1980s until June of 1991. However, CNA purportedly terminated Construct because of its past performance problems on public works contracts.
 
 
 62
 At trial, counsel for the City attempted to elicit testimony from Hurst and Dennis Goggin, the former president and general manager of Construct, regarding CNA's termination. The district court found that such testimony was prejudicial and not relevant to the issue of whether Construct had a bonding problem with Aetna. The district court also did not permit a CNA representative named Carol Brown to testify that CNA's decision to withdraw bonding was the result of Construct's past performance problems.
 
 
 63
 The City argues that the district court erred in excluding such evidence because it is relevant to show that Construct's inability to obtain bonding after the default termination was not due solely to this specific event. Rather, the City maintains that Construct's history of poor performance on public works contracts was the cause of Construct's bonding problems.
 
 
 64
 Construct argues that this evidence is not relevant because the issue in the instant case is whether the City's default termination affected Construct's bonding relationship with Aetna. This issue was framed more broadly at trial. For example, Construct's insurance agent, stated that the principal effect of a default termination on a construction company is that the company loses its bonding capacity. Hurst further testified that Construct was, in fact, unable to obtain bonding from any surety after the default termination.
 
 
 65
 The City contends that this evidence is relevant for two purposes. First, the City wished to show that CNA's decision not to issue public works bonds on behalf of Construct was due to Construct's past performance problems and unrelated to the City's default termination. Second, the City alleges that Construct's post-default termination bonding problems were also caused by its past performance problems rather than by the City's default termination. As previously discussed, Construct is only entitled to destruction of business damages if a jury could reasonably find that the inference linking the defendant's conduct to the damage is more probable than an inference connecting the loss to other causes. See Wing, 684 P.2d at 320-321.
 
 
 66
 The district court did permit limited testimony from Hurst indicating that CNA's decision not to offer bonding to Construct was unrelated to the City's default termination. However, the district court would not permit further testimony regarding the basis for CNA's decision to discontinue its bonding relationship with Construct.
 
 
 67
 The district court noted as follows with regard to the proposed testimony by Hurst on this issue:
 
 
 68
 I think that would immediately get us into inquiries that go far beyond the logical limitation and parameters of this case because we have no idea why it is that CNA discontinued the bonding relationship and it would take a lot of evidence, I think, to explore that, and as I say, it could have something that is related to [Construct] as you suggest, but it may be because of underwriting criteria and considerations that aren't directly related to that.
 
 The court further stated that
 
 69
 the point was that they went into this job with a bond. They came out of the job without a bond, and I don't see that we should conclude that had they finished this job successfully and there had been no problem, Aetna wouldn't have been perfectly happy to have bonded them on the next job.
 
 
 70
 The district court concluded that this evidence raised collateral issues, had little probative value, and posed a potential for prejudice. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ... [or] undue delay." Fed.R.Evid. 403.
 
 
 71
 The district court did not abuse its discretion in excluding evidence regarding the reasons for CNA's decision to terminate its bonding relationship with Construct. We agree that this evidence could result in delay and confusion in the minds of the jurors. Additionally, this evidence had limited probative value for several reasons. Despite Construct's problems on previous public works contracts, the record reflects its previous performance history did not destroy its bonding capacity. Construct was able in fact to obtain a bond from Aetna after CNA terminated its relationship with Construct. Moreover, it can logically and reasonably be inferred from the evidence presented at trial that the default termination alone was sufficient to destroy a construction company's bonding capacity, notwithstanding a company's performance on prior projects. Finally, the City has not demonstrated actual prejudice, as required by this Court.
 
 
 72
 B. The district court did not abuse its discretion by excluding evidence of Construct's past performance problems on public works contracts.
 
 
 73
 The City also sought to introduce evidence of Construct's past performance problems on public works contracts for the purpose of rebutting Construct's testimony regarding the company's value. The district court stated as follows with respect to the evidence of past performance:
 
 
 74
 If [Construct] wants to put on evidence of valuation of the corporation at the time of breach, which is in some way based on its past record, past profit, goodwill, that sort of thing, then it is only right that the defendant can rebut that evidence by showing that ... the defendant had defaults, past problems, bad relationships with bonding companies, with City Council or whatever it happens to be.
 
 
 75
 However, the district court also noted that such evidence would have to pass the relevancy test. In other words, there must be a connection between the prior bad performance and the value of the company.
 
 
 76
 At trial, Randy Dunn, Construct's accountant, testified that Construct suffered monetary damage in the amount of $1,632,283 as a result of the default termination. This testimony was based on, among other things, Dunn's $1,952,121 valuation of the company prior to the default termination. In determining the pre-default termination value of the company, Dunn examined Construct's gross revenues for the years 1987 through 1991 and compared Construct's gross profit history to other, similarly situated construction firms. The pre-default termination value of Construct was not based on reputation, "blue sky" or goodwill.
 
 
 77
 Although Dunn testified regarding Construct's gross profits, Construct correctly notes that there is nothing in the record to show that the City attempted to introduce evidence to rebut Dunn's claims of gross profitability. Therefore, we decline to disturb the district court's ruling excluding evidence of Construct's past performance problems on public works contracts.
 
 
 78
 C. The district court did not err in admitting the testimony regarding alternate meanings of the term "milestone" to clarify the contract time schedule pursuant to Jury Instruction Nos. 7 and 8.
 
 
 79
 Jury Instruction No. 8 states that "[a]ny ambiguity in the language of a contract should be resolved against the drafter of the contract." Jury Instruction No. 7 states: "[e]xpress terms of a contract may be varied by conduct of the parties. Custom and practice of the building industry may be relied on to interpret ambiguous or missing provisions of a contract." The City argues that the district court erred in giving these instructions because it did not determine, as a matter of law, whether the contract between City and Construct was ambiguous.[5]
 
 
 80
 A contract is ambiguous "if it is reasonably subject to conflict in its interpretation." Badell v. Badell, 835 P.2d 677, 680 (Idaho Ct.App.1992). Here, the trial court stated that it was giving the ambiguity instructions because the term "milestone" could "be analyzed in more than one way as to whether or not ... there is a drop-dead date ... or whether its failure to meet that date right on the money is not a substantial lack of performance." We conclude that this constitutes a sufficient finding of ambiguity by the trial judge.
 
 
 81
 The City argues that this finding is incorrect because the contract language is unambiguous. The City contends that the term "milestone" is only susceptible to one meaning in light of the fact that there are scheduled time periods in the contract which "shall be adhered to and are the last acceptable date unless modified in writing between the City and Contractor." The determination of whether a contract is ambiguous is a question of law that we must review de novo. Carpenters Pension Trust Fund v. Underground Const. Co., 31 F.3d 776, 778 (9th Cir.1994). We agree with the district court's determination that the term "milestone" is ambiguous. The term is undefined, and is therefore, susceptible to different meanings.
 
 
 82
 Because the district court found that the term "milestone" was ambiguous, it did not abuse its discretion in permitting Dennis Goggin, Construct's former president and general manager, to testify that he viewed the milestone dates as guidelines instead of as "drop-dead dates".
 
 
 83
 IV. The district court did not err by failing to instruct the jury that Construct's failure to maintain an Idaho Public Works License was a misdemeanor.
 
 
 84
 When reviewing jury instructions, we must determine
 
 
 85
 "whether, viewing the jury instructions as a whole, the trial judge gave adequate instructions on each element of the case to ensure that the jury fully understood the issues. A court is not required to use the exact words proposed by a party, incorporate every proposition of law suggested by counsel or amplify an instruction if the instruction as given allowed the jury to determine intelligently the issues presented."
 
 
 86
 Little Oil Co., Inc. v. Atlantic Richfield Co., 852 F.2d 441, 444 (9th Cir.1988) (quoting Los Angeles Memorial Coliseum Comm'n v. National Football League, 726 F.2d 1381, 1398 (9th Cir.), cert. denied, 469 U.S. 990 (1984)).
 
 
 87
 The City's requested jury instruction No. 18 states as follows:
 
 
 88
 Under Idaho law, any corporation acting in the capacity of a public works contractor within the meaning of this act, without a public works contractor's license, shall be guilty of a misdemeanor, and shall, upon conviction thereof, be subject to a fine or imprisonment. The same penalty shall apply to any officer of any corporation consenting to, participating in, or aiding or abetting any such violation of this act.
 
 
 89
 The City contends that the jury was entitled to know that contractors have a serious obligation under Idaho law to maintain a license, and that a failure to have such a license could result in a criminal conviction. It further claims that this instruction was crucial to its argument that Construct's failure to maintain such a license a substantial failure under the Contract.
 
 
 90
 Viewing the jury instructions as a whole, we finds that the district court did not err by failing to give the City's proposed jury instruction regarding the consequences of failing to maintain a construction license. This proposed jury instruction did not set forth an actual element of law applicable in the instant case. Rather, whether Construct maintained a license in compliance with Idaho law constituted evidence to support the City's contention that its default termination of Construct was justified under the Contract.
 
 
 91
 Further, any error committed by the district court as a result of its determination not to instruct the jurors on Idaho public works licensing laws would be harmless. The district court permitted testimony regarding the revocation of Construct's public works license. For example, the City's attorney questioned witnesses regarding the fact that it is a criminal violation under Idaho law for a construction company to work without a contractor's license. Additionally, it was elicited from one of Construct's witnesses that City officials are required by law to ensure that a public works contractor has the appropriate license. Further, counsel for the City maintained in its closing argument that the revocation of Construct's license constituted an avoidable delay for which Construct should be held responsible.
 
 
 92
 V. The district court properly allowed the introduction of evidence regarding Construct's general and administrative costs and a 15% markup. Additionally, the evidence supports the jury's award of $352,992 in connection with this claim.
 
 
 93
 Whether settlement costs referred to in the contract, pursuant to 40 C.F.R. Sec. 33.1030(4) include administrative expenses and a 15 percent markup is a question of law, reviewed de novo. This court reviews for abuse of discretion the district court's decision to admit evidence regarding these expenses and markup. Monotype Corp. v. International Typeface Corp., 43 F.3d at 448.
 
 
 94
 40 C.F.R. Sec. 33.103(4)(c), which was incorporated into the Contract, states as follows in pertinent part:
 
 
 95
 If termination for default is effected by the recipient, an equitable adjustment in the price provided for in this subagreement shall be made, but (1) no amount shall be allowed for anticipated profit on unperformed services or other work.... If termination for default is effected by the contractor, or if termination for convenience is effected by the recipient, the equitable adjustment for any termination shall provide for payment to the contractor for services rendered and expenses incurred prior to the termination, in addition to termination settlement costs reasonably incurred by the contractor relating to commitments which had become firm prior to the termination.
 
 
 96
 (emphasis added). During trial, Construct requested an award of $393,044.39 as damages for its settlement costs of firm commitments, which included $63,856.73 for direct expenses, $277,921.00 for general and administrative expenses and $51,266.60 for a 15% markup.
 
 
 97
 According to Special Verdict Question # 2, the jury awarded $352,992.00 for (i) unpaid costs incurred prior to termination; (ii) reasonable profit for any work provided and performed prior to termination; and (iii) unpaid settlement costs reasonably incurred by Construct relating to commitments which had become firm prior to termination. The City contends that this award is contrary to law to the extent it compensates Construct for general and administrative expenses and markup.
 
 
 98
 In contrast, Construct urges this court to broadly interpret the phrase "costs reasonably incurred by the contractor relating to commitments" to include anticipated profit on these previous firm commitments. Construct claims that equitable adjustment in construction law traditionally includes profit. We agree.
 
 
 99
 With regard to general and administrative expenses, the City states that these expenses constitute overhead and would have been incurred by Construct notwithstanding the breach. The district court ruled that the language in 40 C.F.R. Sec. 33.103(4) was broad enough to permit an award of general and administrative expenses. This determination was not erroneous. There is nothing in the regulations indicating that settlement costs exclude overhead expenses.
 
 
 100
 VI. The district court abused its discretion by denying the City's motion to amend the judgment to eliminate the damage award for lost profits.
 
 
 101
 We review the denial of a Rule 59(e) motion to amend the judgment for abuse of discretion. Floyd v. Laws, 929 F.2d 1390, 1391 (9th Cir.1991).
 
 
 102
 Construct received damages for anticipated lost profits on the Project, as well as damages for diminution of business value. The City argues that these awards constitute double recovery because the damages for diminution of business value encompass its anticipated lost profits attributable to the Project.
 
 
 103
 Construct claims that the City has waived its right to appeal this issue pursuant to E.W. French & Sons, Inc. v. General Portland, Inc., 885 F.2d 1392, 1402 (9th Cir.1989). Construct states that the City did not object at trial to the special verdict questions regarding lost profits and business destruction damages. However, at the time the jury was instructed, the City argued in its renewed motion for judgment as a matter of law that the claim for lost profit should not be submitted to the jury if the court decided to submit the business destruction issue. The district court denied this motion.[6] This objection is sufficient to preserve the issue for appeal.
 
 
 104
 There are no published cases applying Idaho law which consider the double recovery issue. Although both parties refer to Pocatello Auto Color Inc. v. Akzo Coatings, Inc., 896 P.2d 949 (Idaho 1995), this case does not establish whether awarding lost profits and business destruction damages for the same period of time constitutes double recovery. However, in City of San Antonio v. Guidry, 801 S.W.2d 142, 150 (Tex.Ct.App.1990), the Texas court of appeals stated that a plaintiff could not recover as damages both lost profits and the loss in value of his business during the same time period. Nonetheless, the Texas court found that the jury instruction regarding lost profits was adequate because it "instructed the jury not to include any amount that it may have awarded for destruction of the business." Id.
 
 
 105
 Here, Construct's accountant testified that the loss of value to Construct's business as a result of the default termination was $1,632,283. This conclusion was based on Dunn's estimate that Construct was worth $1,952,121 as of December 31, 1991, and worth $319,838 immediately after the City's default termination. Dunn's estimate of Construct's pre-termination value was based on a capitalization of earnings method. The capitalization of earnings method examines what a willing buyer would have paid for Construct at the end of 1991, based on the weighted average pre-tax basis. Dunn's valuation of Construct after the termination was based on the liquidation value of Construct's equipment.
 
 
 106
 In accordance with Dunn's valuation, the jury awarded Construct $1,632,283 as business destruction damages. During cross-examination, counsel for the City questioned Dunn about the appropriateness of receiving damages for both loss of profits and business destruction. Dunn stated that he believed that an award of both damages was appropriate, but did not explain why.
 
 
 107
 We find that denying the City's motion to amend the judgment to eliminate the award of lost profits was an abuse of discretion. Awarding both lost profits and business destruction damages in the instant case results in double recovery. Construct's post-default termination valuation is based on the assumption that, after the default termination, there would be no business and no profits. Dunn testified that Construct's value was based solely on the liquidation value of its equipment, and did not include other items such as accounts receivable, or profit which would have been received upon the completion of the project. Therefore, the difference between the pre-default termination valuation and post-default termination includes the loss of profit due on the Project. The judgment is modified to eliminate the lost profit damages awarded to Construct in the amount of $459,041.00.
 
 
 108
 VII. The district court did not abuse its discretion by failing to award prejudgment interest to Construct.
 
 
 109
 As previously stated, this Court reviews the denial of a Rule 59(e) motion to amend the judgment for abuse of discretion. Floyd v. Laws, 929 F.2d 1390, 1391 (9th Cir.1991).
 
 
 110
 After the conclusion of the trial, Construct brought a motion pursuant to Fed.R.Civ.P. 59(e), to amend the judgment to include an award of prejudgment interest under Sec. 28-22-104 of the Idaho Code. This section provides for the award of prejudgment interest of 12% for money due by express contract. According to the Idaho Supreme Court, "[a] trial court may award prejudgment interest from the date of the breach contract when the amount upon which the interest is to be based is mathematically and definitely ascertainable." Ervin Const. Co. v. Van Order, 874 P.2d 506, 514 (Idaho 1993).
 
 
 111
 A claim is liquidated if the evidence submitted makes it possible to compute the amount with exactness, without reliance upon opinion or discretion. Seubert Excavators, Inc. v. Eucon Corp., 874 P.2d 555, 561 n. 2 (Idaho Ct.App.1993). Examples of liquidated claims are "claims upon promises to pay a fixed sum, claims for money had and received, claims for money paid out, and claims for goods or services to be paid for at an agreed rate." Id.
 
 
 112
 A. Prejudgment interest on damages prior to termination in the amount of $352,992.
 
 
 113
 Construct claims that these damages are liquidated and definitely ascertainable because the amount of its unpaid bills were fixed and definite at the date of termination. Additionally, Construct argues that its general and administrative costs and reasonable profit were ascertainable with the application of mathematical formulas to its fixed revenues and expenses.
 
 
 114
 The City argues that the amount of these damages was disputed, not liquidated and not capable of determination by mathematical certainty. The City notes that witnesses offered conflicting testimony with regards to the amount of damages, and the proper computation method. Additionally, the jury had considerable discretion in determining the reasonable amount of pre-termination damage.
 
 
 115
 We find that the district court did not abuse its discretion by deciding that Construct was not entitled prejudgment interest on this damage award. These damages were not mathematically and definitely ascertainable until awarded by the jury.
 
 
 116
 B. Prejudgment interest on lost profits on the Coeur D'Alene contract in the amount of $459,041.
 
 
 117
 We do not need to consider whether the district court properly denied interest on the lost profit portion of the judgment because this damage award is reversed.
 
 
 118
 C. Prejudgment interest on destruction of business damages.
 
 
 119
 Construct alleges that the destruction of business damages were capable of mathematical computation because the pre- and post-termination value of Construct was readily ascertainable by examining prior financial statements and determining the liquidation value of Construct's assets. However, the City illustrates that the damages to Construct's business were disputed at trial and subject to a significant range of opinion.
 
 
 120
 We agree. For example, Construct calculated the damage to its business by determining Construct's pre-termination value. Construct's witness based his determination of Construct's pre-termination value on the capitalization of earnings method. This valuation method implicitly involves the utilization of either a discretionary capitalization factor or discount factor, based on opinion. As previously stated, a claim is not liquidated if it is not possible to compute the amount of damages with exactness, and without reliance upon opinion or discretion. Seubert Excavators, Inc., 874 P.2d at 561 n. 2.
 
 
 121
 VIII. Neither Construct nor the City are entitled to attorney's fees on appeal.
 
 
 122
 Although both parties refer to Idaho law in connection with their request for attorney's fees, this Court is not bound by Idaho Code Sec. 12-120(3). See e.g. Bell v. City of Kellog, 922 F.2d 1418, 1425 (9th Cir.1991) (rejecting appellants request for attorney's fees pursuant to Idaho Code Sec. 12-121, and considering the request pursuant to Fed.R.App.P. 38). Rather, we may award fees pursuant to Rule 38 the appeal of either party is frivolous. An appeal is frivolous when the result is obvious or the appellant's arguments are wholly without merit. Bell, 922 F.2d at 1425. Courts in this circuit have been reluctant to classify appeals as frivolous. See In re Harvey, 172 B.R. 314, 319 (9th Cir. BAP 1994).
 
 
 123
 The requests for attorney's fees by Construct and the City are denied. Rule 38 now requires parties seeking fees on appeal to file a separate motion. Neither party filed such a motion. Additionally, Construct and the City do contend that the appeal of its opponent is frivolous. We find that the arguments made by both the City and Construct are meritorious.
 
 
 124
 Construct also requests costs pursuant to Rule 39. This Rule provides, in pertinent part, that "if judgment is affirmed or reversed in part, or is vacated, costs shall be allowed only as ordered by the court." Fed.R.App.P. 39(a). We decline to award costs in the instant case and find that each party should bear its own costs.
 
 
 125
 We affirm the decision of the district court and modify the amount of
 the judgment as follows:
 $ 352,992.00 Damages for (i) its unpaid costs incurred prior to
 termination; (ii) for reasonable profit for any work
 provided and performed prior to termination; and
 (iii) unpaid settlement costs reasonably incurred by
 Construct Tech relating to commitments which had
 become firm prior to the termination;
 $1,632,283.00 Damages for destruction to Construct's business;
 $ 396,000.00 Attorney's fees;
 $ 24,307.68 Stipulated Costs.
 -------------
 $2,405,582.68
 
 
 126
 AFFIRMED in part; and REVERSED in part.
 
 
 
 *
 Honorable Dickran M. Tevrizian, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The City has filed a motion to certify this issue to the Idaho Supreme Court. After hearing oral argument on this Motion, we have decided to deny the motion
 
 
 [2]
 Sec. 28-2-715(2)(a) of the Idaho Code provides in pertinent part:
 (2) Consequential damages resulting from the seller's breach include
 (a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know....
 The official comment to the corresponding section in the Uniform Commercial Code states that the U.C.C. follows "the older rule at common law which made the seller liable for all consequential damages of which he had 'reason to know' in advance", with certain modifications inapplicable in this case. See Official Comment to Uniform Commercial Code Sec. 2-715 (1989).
 
 
 [3]
 Rule 602 states in pertinent part: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."
 
 
 [4]
 Rule 801 defines hearsay statements. Pursuant to Federal Rule of Evidence 802, hearsay is not admissible except as provided by, among other things, the Federal Rules of Evidence
 
 
 [5]
 Additionally, the following discussion took place at oral argument:
 JUDGE BEEZER: You're conceding liability for the purposes of this argument? You're saying the instructions were correct, the verdict is unimpeachable as to liability?
 COUNSEL FOR THE CITY: We are not challenging the jury's determination ... that the City did not have grounds to terminate the contract. We are proceeding today primarily on the damage question.
 Consequently, even if the district court's ambiguity ruling were in error, the City has waived any such argument.
 
 
 [6]
 The district court judge noted that he might be wrong in concluding that both lost profits and business destruction damages are recoverable, and expressed concerned about making a mistake or error. However, counsel for Construct noted that the jury verdict form was set out with line items concerning the damage so this Court could remove part of the damage by referring to the verdict form